People *v.* Beatty.

---

## THE PEOPLE *v.* BEATTY.

DEFENDANTS in criminal cases who have not been held to answer before the impanneling of the grand jury, may challenge the panel on arraignment. If they have been held to answer, they must challenge the panel before it is made up and sworn.

The grand jury may inquire into all offenses committed within the county, not barred by the Statute of Limitations.

When time is important, Courts will inquire into a day, or fractional portion of a day.

The term of Court is sufficiently stated in an indictment, when the day on which the indictment was found is given.

An indictment in the Court of Sessions in San Francisco, may be entitled either as of the county of San Francisco, or as of the city and county of San Francisco.

An indictment for dealing *faro* designating the offense as a "felony," is sufficiently specific as to name. And without this word the indictment is good, where it states the facts which constitute the offense.

The Act of April 27th, 1857, to prohibit gaming, is constitutional.

APPEAL from the Court of Sessions, city and county of San Francisco.

Defendant first moved to quash the indictment, and then demurred on grounds which appear in the opinion of the Court. Demurrer overruled. Defendant appeals.

*Byrne & Freelon*, for Appellant.

1. The defendant having been held to answer after the impanneling of the grand jury which indicted him, there was no

mode pointed out by statute or otherwise to challenge the panel or the individual grand jurors. The indictment should have been quashed. (Wood's Dig. 284, Secs. 181, 186, 187, 279, 189.) At common law, all commitments and recognizances to appear and answer were for the next sessions or goal delivery. (1 Chitty's Crim. Law, Marg. p. 90; Blac. Com. Ch. 22, pp. 295—296, and Note 4; U. S. Dig. Crim. Law, and cases cited; 1 Parker's Crim. Rep. *People* v. *Mack*, 569; Wharton's Crim. Law, 230; *People* v. *Roberts*, 6 Cal. 214; *People* v. *Freeland*, Id. 96; Wood's Dig. Art. 1783, Sec. 593.) "Sessions are considered as one day," and any other rule would present the anomaly of an indictment appearing of record to be found before the offense is alleged to have been committed. (Bac. Abr. Vol. 2, p. 716.)

2. The statute requires the term of the Court to be inserted in the indictment. It should appear affirmatively whether 22d day of November was of October Term. (Dig. Art. 1535, p. 288.)

3. The Act creating Courts of Sessions provides for their names: They "shall be termed the Court of Sessions of —— county, according to the name of the county in which they are held." (Laws of 1850, p. 210.)

The Act of 1856, repealing the several charters of the city of San Francisco, and establishing the boundaries of the county, etc. does not affect the name of the Court of Sessions. (Laws of 1856, p. 145.)

The Act regulating proceedings in criminal cases provides, that the indictment shall designate the name of the county, etc. (Dig. Art. 1535, p. 288.)

The Act of 1856, above referred to, simply creates a corporation, known under the name and style of the " City and County of San Francisco;" it does not repeal or otherwise affect the law by which the county of San Francisco was called into existence. (*The People* v. *Mullins*, 10 Cal. 20.)

4. The Legislature intended that, in all indictments, the name of the crime charged should be set forth—as, murder, arson, manslaughter, etc. (Dig. Art. 1535, p. 288.)

It is well established that the name of the offense must be expressed. (1 Chitty's C. L. 110; *People* v. *Aro*, 6 Cal. 209.)

In this case, the indictment not alone omits to charge the

offense by name, but alleges that the defendant is "charged with the crime of felony." Felony is a divisional term of the law.

5. The indictment should not have charged the offenses conjunctively. "Dealing and playing," is the language of the indictment. "Dealing, playing, carrying on," etc. are the terms of the statute. Each is intended as a separate offense. A person guilty of doing either, becomes liable; more than one offense therefore, is charged, which vitiates the indictment. (Dig. Art. 1537, p. 288.)

The indictment should have alleged whether the defendant dealt, or played, or carried on, opened, or caused to be opened, by himself, or whether he played at a game of *faro*. This is essential, as well for the defendant as the Court. If the former, he is guilty of a felony; if the latter, of a misdemeanor. The charging part of the indictment not designating the crime of which he was accused, it becomes additionally incumbent on the pleader to comply with the statute in setting out distinctly the facts and circumstances of the charge. An indictment upon a penal statute must be construed strictly—it must show what offense has been committed, etc.—what penalty incurred, by positive averments—it is not sufficient that they appear by inference. (*Com.* v. *Watts*, 7 Dana, 29 ; *Com.* v. *Macaboy*, 3 Id. 70 ; *Ike* v. *The State*, 23 Miss. 525; *Kit* v. *The State*, 11 Humph. 167; *People* v. *Allen*, 5 Denio, 76.)

6. The Act of 1857, on which the indictment is framed, employed the following terms : "Whether the same be played for money, checks, credit, etc." It is submitted that in this particular alone, the indictment is fatally defective. It should have averred the character of the money by description. (*Johnson* v. *The State*, 1 Mar. & Yer. 129.) The term "money," means only that which is a legal tender. (1 East, P. C. 147—149.) It does not include bank bills, though they pass current, nor United States Treasury Warrants. (*People* v. *Cohen*, 8 Cal. 42; *The State* v. *Jim*, 3 Mur. 3; *Williams* v. *The State*, 12 Sm. & M. 58.)

Our statute requires that the indictment must contain the particular circumstances of the offense charged. (Dig. Art. 1535, p. 288.)

The Act of 1857 is entitled "An Act to prohibit Gaming." The term "gaming," has been defined to be " a contract between two

or more persons, by which they agree to play, by certain rules, at cards, dice, or other contrivances, and one shall be the loser and the other the winner." (Bouv. Law Dic. Tit. Gaming.)

The indictment should set forth the facts and circumstances of the act of gaming. It does not appear whether money was lost, won, or risked. Some of these three acts are necessary to constitute the act prohibited. If none were committed there was no offense, and without such allegation clearly and distinctly set forth, so as to enable defendant to know the exact offense charged, the indictment is bad.

When (says the Court) the commission of the offense only is alleged in the words of the statute the indictment will not be sustained. The indictment must allege the nature of the offense and the circumstances in addition. This is also our statutory provision. (*State* v. *Rainor*, 3 McCord, 539 ; *State* v. *Raiford*, 7 Porter, 101 ; *State* v. *Fields*, Mar. & Yer. 137 ; *Sarah* v. *The State*, 23 Miss. ; 6 Cush. 267 ; *State* v. *Williams*, 14 Texas, 98.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. and FIELD, C. J. concurring.

The defendant was convicted in the Court of Sessions of San Francisco County, of the offense of dealing the game of faro, contrary to the provisions of the Act of April 27th, 1857. (Statutes of 1857, p. 108.)

A very ingenious argument has been made by the counsel for Appellant to show that the judgment cannot stand, because of sundry defects and irregularities in the proceedings.

The first point is, that the Court below erred in refusing the motion to quash the indictment, upon the ground that it was found by a grand jury impanneled before the alleged offense was committed.

The statute (Wood's Dig. 284, Sec. 181) provides, that a challenge may be taken to the panel of the grand jury, or to any individual grand juror, (in the cases afterward described,) by the people or by the defendant. By Section 189, "A person held to answer, etc. can take advantage of any objection to the panel, or to an individual grand juror, in no other mode than that by challenge, as prescribed in the preceding sections." Sec. 196 : " If an offense be committed during the sitting of the Court,

37

after the discharge of the grand jury, the Court may, in its discretion, direct an order to be entered that the Sheriff summon another grand jury. Sec. 279, p. 251 : "When the defendant has not been held to answer before the finding of the indictment, he may move to set it aside on any ground which would have been a good ground for challenge either to the panel or to any individual grand juror."

It cannot be questioned that the powers of the grand jury are general, to inquire into and present all offenses which occur in the county. There is no qualification in the statute as to the time of their commission, except that constituted by statutes of limitation. There is no reason, apart from express statutory provisions, which should prevent immediate action by a grand jury when a crime is committed, while many reasons exist for promptness of proceeding. The 196th Section, already quoted, is indicative of this policy. The 205th Section is to the same effect. The grand jury has the power to inquire, and it is their duty to inquire, into all public offenses, committed or triable within the county, and to present them to the Court, either by presentment or indictment; and the oath of the foreman, (Sec. 191,) is as comprehensive and as expressive of this same general duty. As this requirement would comprehend the power to find an indictment for a crime committed after the impanneling of the jury, as well as before, the defendant is driven to show that this power has been qualified by some other portion of the statute, and he seeks to do this by the argument that the statute evidently contemplates the defendant should have a right of challenging the panel, and that it has only given this right in certain cases, of which this is not one. The conclusion, therefore, is that this case, in which the defendant was held to answer for an offense committed subsequently to the impanneling of the grand jury, is not included within those cases upon which the grand jury can act. But it is quite as rational to construe the subordinate provisions with reference to the general power, as to deny effect to the general provision, because not harmonious with the subordinate provisions. It is true, Sec. 189 declares that, when a person is held to answer, he can take advantage of objections to the panel or to individual jurors in no other mode than that by challenge, as prescribed in the preceding section.

People v. Beatty.

But this section applies only to cases where the defendant is held to answer before the impanneling of the jury. So in Sec. 297, when the defendant has not been held to answer before the finding of the indictment, he may move to set it aside, etc. We must give a reasonable interpretation to this language to answer the end designed by the Legislature, and to bring this clause—which is to be construed liberally for the defendant—into harmony with the general statute. The meaning of the clause is, that the defendant shall have this privilege of challenge on arraignment, when from the nature of things, he could not have it at the impanneling of the jury. The arrest before the actual finding of an indictment, but after the impanneling of the jury, as much prevents the challenge to the panel as if no arrest had been made at all. The actual date of the finding of the indictment, therefore, is of no importance; the real matter is, the relation between the time of the arrest and the impanneling of the jury; and the whole statute, by this construction, is made harmonious. 1. All offenses committed within the county, not barred by limitation, are within the province of the grand jury. 2. Defendants may, and must, challenge the panel when they have been held to answer, before the panel is made up and sworn. 3. Defendants, who have not been held to answer before the impanneling of the grand jury, may exercise the same right of challenge on their arraignment.

There is no force in the suggestion, that the term of a Court is considered by fiction of law, to be but one day, and, therefore, the anomaly might appear, that the indictment was found before the offense was committed. The fictions of law are never permitted to defeat justice, but are only used to advance it; and, whenever time becomes important, Courts will inquire into a day, or even a fractional portion of a day.

Several technical points are taken to the indictment, but we think they are not sustained.

1. The term of the Court is sufficiently stated in the indictment, when the day is given on which the indictment is found.

2. The indictment was properly entitled, as of the City and County of San Francisco. This is the name by which the present geographical and municipal division of the State which is known as, and is in fact, the county of San Francisco, is recog-

nized. The Court of Sessions is the Court for that territory which is, and is known as, the county of San Francisco. It is not less the county because called the City and County. The name is only necessary as indicating the Court for the territory, and this name does clearly and unmistakably indicate it. The case of *The People* v. *Mullins,* (10 Cal. 20,) is not opposed to this view. The indictment in that case was entitled of the county of Sacramento, and this was held proper. We think the indictment in the case at the bar would have been good, if entitled either way—the county, or the city and county.

3. Several objections are taken to the indictment. 1. That the offense is designated as a felony, and no more specific name is given. This seems to be enough by the statute, Section 238; and even if this word had not been added, we do not think, as the facts are stated which give definition to the offense, that the omission would hurt.

The indictment is in this form:

" *The People of the State of California against Robert Beatty.*— State of California—In the Court of Sessions of the city and county of San Francisco, October Term, A. D. one thousand eight hundred and fifty-eight.—Robert Beatty is accused by the grand jury of the city and county of San Francisco, State of California, by this indictment, found this twenty-second day of November, A. D. one thousand eight hundred and fifty-eight, of the crime of ' felony,' committed as follows: The said Robert Beatty, on the fifth day of November, A. D. 1858, at the said city and county, State aforesaid, with a pack of playing cards, with one Abraham M. Carter, and divers other persons, to the grand jury unknown for the sum of twenty dollars in money, and for divers ivory checks, then and there representing money, to wit: twenty dollars, then and there unlawfully and feloniously did deal and play a game of faro, the said game of faro being then and there a banking game, and played with cards contrary to the form, force, and effect, of the statute in such case made and provided, and against the peace and dignity of the people of the State of California.

H. S. BROWN,
District Attorney."

In reply to the criticism of the counsel, we think it unnecessary to say more than that we consider the indictment good under the statute, as it states, with all necessary definiteness, the facts which, by the statute, are made to constitute the offense.

The last point in the brief is, that the statute is unconstitutional. No argument is offered to support this proposition; nor is it maintainable. Similar statutes exist in many of the States, and have been carried into effect without a question of the constitutional power of the Legislature to pass them. It may be that the punishment is disproportionate to the offense, and that public policy is promoted by such penalties being prescribed for offenses as can and will be enforced; but these are considerations with which we have no concern, for they address themselves solely to the legislative department, and in no way affect the constitutionality of its action.

Judgment affirmed.