## Erlanger Kennel Club, et al. v. Daugherty, et al.

## Erlanger Kennel Club, et al. v. Commonwealth.

(Decided February 26, 1926.)

### Appeals from Kenton Circuit Court.

1.   Appeal and Error—Determination of Motion for Temporary or Preliminary Injunction Heard Before Members of Court of Appeals Held Not Necessarily Binding on Court of Appeals (Civil

Code of Practice, Section 296).—Determination of motions with reference to temporary or preliminary injunction heard before members of Court of Appeals pursuant to Civil Code of Practice, section 296, held not necessarily binding on Court of Appeals on appeal from such determination.

2. Gaming—Exemption of Regularly Organized Race Tracks and Inclosures and Wagers Therein from Statutes Denouncing Gaming, Betting, Pool Selling, and Unauthorized Horse Racing, Apply Only to Horse Races (Ky. Stats., Sections 1328a, 1960, 1961, 3914b-1, 3914b-6, 3990a-1, 3990a-4).—Exemptions under statutes, Ky. Stats., sections 1328a, 1960, 1961, 3914b-1, 3914b-6, 3990a-1, 3990a-4, denouncing gambling, betting, and pool selling and unauthorized racing, excepting from operation of such statutes regularly organized race tracks and inclosures and wagers therein, held to apply to horse races only.

3. Statutes—In Interpreting Statutes, Terms Employed Will be Given Meaning and Application in Light of Circumstances and Conditions Existing at Time of Their Enactment, and Purpose of Legislature.—In interpreting a statute, the terms employed will be given meaning and interpretation in the light of the circumstances and conditions existent at the time of their enactment, and the purpose that the Legislature had in view in enacting them.

4. Gaming—Pool Room Act, Denouncing Betting, Held Not Limited in Application to Betting or Acts Denounced Therein When Committed at Places Away from or Other Than on Race Track (Ky. Stats., Sections 3914b-1, 3914b-6).—Pool Room Act (Ky. Stats., sections 3914b-1, 3914b-6), denouncing betting on horse racing, held not to apply only to betting and other acts denounced therein when committed at places away from and other than on a race track, but applies as well to betting and pool selling conducted on a race track not within exemption provision therein.

5. Gaming—Conducting Dog Races Within Inclosed Track and Permitting Wagers and Conducting Pools Therein Abatable as a Nuisance in View of Statutes (Ky. Stats., Sections 1328a, 1960, 1961, 3914b-1, 3914b-6, 3990a-1, 3990a-4).—Defendants conducting dog races within inclosed track wherein dogs were induced to race by means of mechanical hare, and who permitted wagers and conducted pools on outcome of races, held to be engaged in unlawful conduct abatable as a nuisance by the Commonwealth, in view of Ky. Stats., sections 1328a, 1960, 1961, 3914b-1, 3914b-6, 3990a-1, and 3990a-4, which denounce gambling, betting, pool selling, and unauthorized horse racing.

6. Constitutional Law—Constitutionality of Acts Not Passed on, Where Case May be Disposed of Without, and Those Directly Affected are Not Parties (Ky. Stats., Sections 1961, 3914b-6).—Constitutionality of sections 1961, 3914b-6, parts of Ky. Stats., would not be passed upon in suit to abate conduct of dog races as a nuisance, where case could be disposed of without determining such

question, and those affected by such disposition were not parties to the litigation.

STEPHENS L. BLAKELY, JOHN T. MURPHY and MARTIN J. BROWN for appellants.

F. E. DAUGHERTY, Attorney General, and ORIE S. WARE for appellees.

HELM BRUCE amicus curiae on behalf of appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Owen P. Smith, George Sawyer and Martin J. Hyland own a tract of land near Erlanger, Kenton county, Kentucky, known as the Erlanger Fair Grounds, which is enclosed by a high solid picket fence and in which there is a grand stand for the accommodation of patrons who pay the stipulated entrance fee to witness the entertainments hereinafter described. The grounds seem to be abandoned as fair grounds and the race track for horse races formerly constructed therein appears no longer to be used for that purpose. They rented the premises for an agreed term to the appellant and defendant below, the Erlanger Kennel Club, and it constructed a circular track within the grounds and near the grand stand one-quarter of a mile in length and equipped it with electrical apparatus by means of which what is designated as an "electrical hare" could be run on a single rail in the center of the track so as to cause dogs to chase it, and on the track they ran races with greyhounds which were made to run in an effort to catch the deceptive electrical hare. The races with dogs were run at night between 8 and 11 o'clock, and began August 4, 1925. Great crowds assembled each night to witness the races, and the corporate defendant who installed them sold pools on the races, charging for each ticket from $2.00 to $10.00, the purchaser selecting the number of the dog upon which he desired to bet. When the races were over the owners of the tickets on the dog winning the race divided among themselves the entire amount of money so bet, less the commission charged by the club. The stockholders of the club consist mainly, if not entirely, of the individual owners of the premises, and after the beginning of the races conducted in the manner above briefly described, warrants were gotten out and the defendants therein executed bond for their appearance in court, but they did not

desist from operating the races, and on August 27, 1925, the second case in the caption was filed by the Commonwealth on relation of Frank E. Daugherty, its attorney general, in the Kenton circuit court against the individual owners of the premises, and the club by amendment was afterwards made a defendant. Plaintiff in that equity action more elaborately set out the facts than is above stated, and alleged tht defendants at each race invited, procured, suffered and permitted "large numbers of men and women to assemble and congregate upon their premises and in and about the building thereon known as the 'betting shed,' and to gamble, bet and hazard money and things of value on the result of said dog races," and that defendants would then and there sell to the persons so congregated and assembled pools on the result of the races and engaged in the business of receiving bets on the results thereof, and that they persisted in so doing and that the races attracted large numbers of sporting men, disorderly, idle and evilly disposed people and constituted a common and public nuisance," and that they would continue to do so unless enjoyed by the court, and the prayer was to abate the nuisance by such an injunction.

On September 8 thereafter, and before the court acted on a motion for a temporary injunction in the first case, the club filed its equity action, which is the first one in the caption, against the attorney general of the Commonwealth, and the Commonwealth's attorney of the 16th judicial district, in which it sought an injunction against those officers to prevent them from proceeding against plaintiff therein, either criminally or civilly, and from molesting plaintiff in the operation of its race track upon the ground that it was committing no nuisance in installing the dog races, or in operating its track for such purpose because, as it alleged, such operations were lawful, and it moved for a temporary injunction in accordance with the prayer of its petition. The motion for temporary injunction in each case was heard at the same time and the court granted the one prayed for by the Commonwealth on relation of its attorney general, but overruled the motion for the one asked by the club in its action filed on September 8. A motion was made before a member of this court pursuant to the provisions of section 296 of the Civil Code of Practice to dissolve the one and grant the other, and that motion was heard on Sep-

tember 28, 1925, by six members of this court and the ruling of the learned trial judge in each case was upheld. Afterwards certain pleadings and motions were made which did not change the legal questions involved, and upon final submission the temporary ruling of the court was made permanent, *i. e.*, the petition filed by the club was dismissed, and a permanent injunction was granted in the one filed by the Commonwealth on relation of its attorney general, and to reverse those judgments these two appeals were prosecuted.

The position of appellants in each case is that all of the statutes in the book denouncing gambling, betting, pool selling and racing have no application to the conditions presented in these two cases, for the reason as contended that no statute denounces any kind of races except horse races, and none of them apply to any other races except ones participated in by horses, and that all the statutes exclude any kind of horse races actually run on a regular enclosed race track during the racing season, or other kinds of races that might be run thereon, which contention, however, was denied on two occasions by the circuit judge, and by six members of this court on the hearing of the motions with reference to the temporary or preliminary injunctions. However, since the latter hearing is not necessarily binding on this court, as we have frequently held, it becomes necessary to again consider the questions on these appeals from the final judgments in the case.

Section 1960 of our present statutes was enacted in 1893. It makes it a public offense for any one to set up, keep, carry on, manage, operate or conduct or to aid or assist in doing so, any keno bank, faro bank, or other machine or contrivance used in betting and whereby money or other things of value may be bet, won or lost. The next section (1961) prescribes that the change of name of any of the games, machines or contrivances by which the forbidden things in section 1960 may be done shall not prevent a conviction thereunder, and says: "Nor shall its (section 1960) provisions apply to persons who sell combination or French pools on any regular race track during the races thereon."

In 1906 the present State Racing Commission was created and it was given the power and authority to prescribe rules, regulations and conditions under which horse running races in the state might be conducted, and that none should be conducted except those licensed

by the commission. The first section of that act, now section 3990a-1, refers to corporations formed for the purpose of racing horses and confines the operation of the act to *running* races at such meetings. Section 4 of that act, now 3990a-4 of our present statutes, says: "Every running race meeting at which racing shall be permitted for any stake, purse or reward, except as allowed by this act, is hereby declared to be a public nuisance," and provided that it might be abated by proper injunction brought for the purpose.

In 1908 the legislature enacted what is commonly known as the "pool room" act, now sections 3914b-1 to 3914b-6, both inclusive, of our statutes. The first section of that act makes it unlawful to provide, manage, maintain or keep any room, building, float, vessel or premises in this Commonwealth, or to aid or abet others in doing so, "wherein persons assemble and congregate to bet and wager money or other things of value on the results of any horse race, or *any other* contest between man or beast, run or to be decided in this state, or any other state or country, or advertised, posted or reported as having been run or to be run," and it was further prohibited to manage, maintain, etc., such place or premises "wherein or whereat any money or other things of value shall be received or paid for any ticket, lot, pool or chance on the result of any such horse race *or races* run or to be run in or out of the Commonwealth of Kentucky," etc. (Our italics.) Fines ranging from $1,000.00 to $5,000.00 and a certain designated confinement in the county jail were the prescribed penalties for a violation of any of the provisions of that section.

The last section of that act (3914b-6) says: "The provisions of this act shall not apply to enclosures during regular race meetings or such enclosures wherein horse racing is being conducted under license from the State Racing Commission, and it shall not apply to enclosures during regular race meetings wherein trotting and pacing races are being conducted by regularly organized associations organized for that purpose." In 1920 the legislature enacted the present section, 1328a, of our statutes denouncing betting or wagering money or anything of value on any horse race run or to be run or advertised, posted or reported as being run or about to be run, and prescribed penalties therefor; but one paragraph of the act excluded from its provisions bets and

wagers made "within the enclosure of a race course or track licensed by the State Racing Commission" during an authorized and licensed race meeting thereon, and it should not apply to "such bets or wagers made in an enclosure during regular meetings wherein running, trotting or pacing races are being conducted by associations regularly organized for that purpose."

As heretofore stated, appellants' contentions are that they do not come within the provisions of any of those acts, since they run the races herein described on a regular race track organized for the purpose and are thereby excluded from the operations by the provisions of section 1960, *supra,* by the exemption contained in section 1961; that they do not come within the provisions of the "pool room" act, *supra,* enacted in 1908, because racing in enclosures during regular race meetings are excepted from the provisions of that act, and that the races here involved come within that exemption; that they are not required to obtain a license from the State Racing Commission, because it has jurisdiction only of horse races, and that the "hand book" act of 1920 does not apply, since it is also confined to horse racing.

The reasoning by which those conclusions are arrived at is specious, illogical and entirely unconvincing. It is admitted in this case that dog racing, such as here involved, was an unknown thing beyond fifteen or twenty years ago, since the electrical apparatus by which the dogs could be induced to run was not invented until that time. Therefore, at the time of the enactment of sections 1960 and 1961, *supra,* the legislature could not have had in mind dog races as one of the things excluded from the operation of the latter section wherein regular races were run on enclosed tracks. It is furthermore made so apparent, and it is *so stated* and elaborated upon in the case of State Racing Commission v. Latonia Agricultural Association, 136 Ky. 173, and Douglas Park Jockey Club v. Talbott, 173 Ky. 685, that the regular race tracks and enclosures therefor as are referred to in all of the statutes, contemplated and had reference only to horse races, that it seems useless to argue the point. Indeed, in the Latonia case the racing commission act was upheld solely upon the ground that it was justified as a police measure in order to foster the breed and quality of one of the leading industries of the Commonwealth, that of horse raising. In each of the opinions last referred to it was

expressly stated that all other racing was denounced by the law.

A well known rule for the interpretation of statutes is that the terms employed may be given meaning and application in the light of the circumstances and conditions existing at the time of their enactment, and the purpose that the legislature had in view in enacting them. The condition existing at the time of the enactment of the 1893 statute was that no racing was to be indulged in within the Commonwealth except horse racing and there were no regular tracks, enclosed or otherwise, whereon any kind of racing was performed except horse racing. That act was aimed at forbidding betting, made, done and engaged in through the operation of any sort of contrivance, including racing, except where the race was run on a regularly organized and enclosed track provided excluively for the purpose, but only the operation of French pools on such a track was exempt from the exemption in the statute. In other words, that kind of machine used on such a track at such times was exempted as ''a machine or contrivance'' within the provisions of the act; but it did not exempt any other method of betting even on such tracks. The ''pool room'' act by its very terms applied to all sorts of racing, whether with horses or not, but excluded in its last section (inserted above) races in ''enclosures during regular race meets or such enclosures wherein horse racing is being conducted under license from the State Racing Commission,'' and also trotting and pacing races when they are conducted by legally organized associations for the purpose. The language ''or such enclosure wherein horse racing is being conducted,'' etc., is explanatory of that immediately preceding it, saying, ''enclosures during regular race meetings,'' so as to give the entire language the effect of applying only to horse race meetings while conducted in the manner and at the places therein described.

But it is contended that this court in the case of Commonwealth v. Starr, 160 Ky. 260, construed the ''pool room'' act to apply only to betting and other acts therein denounced when committed at places away from and other than on a race track, and for that reason it has no application to any kind of betting or pool selling when made and done on a regular race track, whatever the character of race. If that conclusion is correct, then the entire exemption of race tracks from the operation of

that act would have been altogether useless, since doing the forbidden acts on such race tracks would not be covered by the statute and, therefore, there would be no necessity to exempt them therefrom. However, the opinion in the Starr case is not susceptible to the construction given it by counsel for appellants. The conduct there involved was carried on and committed at a place where no race was being run, and all that the opinion did was to bring such conduct within the purview of the act. The question as to whether the terms of the act would apply to the denounced conduct if it had occurred on a race track was not involved in that case, and even if the opinion was susceptible of the construction contended for, then so much of it as so held would be dictum, and not binding as a precedent. Any other construction would convict the legislature of discrimination against the very character of racing which the racing commission act sought to foster, and to place restraints and burdens in the way of license and regulations upon such racing and to render all other kinds of racing wholly immune from any such restrictions and burdens, although run and operated under the same conditions, but which we are convinced it was never the intent and purpose of the legislature to do.

In the case of Grinstead v. Kirby, 33 K. L. R. 287, it was, in substance, held that the exemption in section 1961 applied only to horse races, since that was the only kind then in existence and was necessarily the only one in the mind of the legislature. That being true, appellants in this case came under the provisions of that act and, as we have seen, according to our interpretation of the "pool room" act, they came under the denouncements of it, also, because the legislature recognized and dealt with all other character of racing in that act and made its provisions applicable to all of them except exempted horse racing under certain conditions whether running, trotting or pacing races, and, unless the race is one of those kinds the terms of that act apply to it. To uphold appellants' contention would not only endorse an intent and purpose of the legislature to discriminate against horse racing, as we have hereinbefore seen, but would also throw open wide the door for the collection of assemblies and bodies of people to engage in gambling and which experience has taught always results in more or less disorderliness as well as moral depression; so much so as to become a nuisance which, under the doctrine of

the cases of Respass v. Commonwealth, 131 Ky. 807, 21 L. R. A. (N. S.) 836, and Commonwealth v. Ruh, 173 Ky. 771, L. R. A. 1917D 283, may be suppressed and abated by injunction at the instance of the Commonwealth on relation of the proper officer.

Without further elaboration, it is our firm conclusion that appellants were engaged in unlawful conduct which might be prevented by the injunctive remedy sought by the Commonwealth in this case, and that the court properly granted the injunction in the case brought by the Commonwealth and properly refused it in the one brought by the club and the owners of the property.

Other questions as to the unconstitutionality of the 1893 act, *supra,* and as to the unconstitutionality of the construction which we have herein given our various statutes are suggested, but each of them is so far fetched and unreasonable as to require no extended discussion from us. The first one is practically abandoned in brief of counsel, but if not it has no merit in it. The second one assumes that appellants' business is a lawful one, for without that it would have no standing in court, since the constitutional provisions invoked are for the protection of a lawful right and not an unlawful one. Moreover, the alleged discrimination against dog racing relied on in support of that contention was thoroughly dissipated by this court in its opinion in the Latonia case, *supra.*

Learned counsel in an *amicus curiae* brief asks us to declare unconstitutional and invalid the provision in section 1961, *supra,* of our statutes exempting from the provisions of section 1960 "persons who sell combination or French pools on any regular race track during the races thereon," and also declare invalid the exclusion contained in section 3914b-6 from the operation of the provisions of the pool room act. But since the case may be disposed of (as we have already done) without consideration of those questions, and since the parties who would be directly affected thereby are not parties to this litigation, we have concluded to not take up or in any manner consider those questions in this opinion.

Wherefore, the judgment in each case is affirmed.

Whole court sitting.