[Crim. No. 341. Fourth Appellate District.—February 25, 1937.]

THE PEOPLE, Respondent, v. H. B. WILSON, Appellant.

342

S. B. Kaufman, Z. B. West and Robbie Anderson for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

MARKS, J.—This is an appeal from a judgment in which appellant was sentenced to be confined in the county jail of Orange County after being convicted of violating the provisions of subdivision three of section 337a of the Penal Code.

Appellant and four others were charged in a first count of an information with violating the provisions of this subdivision and in a second count with violation of the provisions of subdivision one of the same section. One defendant was acquitted under both counts, and appellant and three others were convicted under the first count. The jury was not able to agree on their guilt or innocence of the offense charged in the second count.

The only cases in California involving the violation of any of the subdivisions of section 337a of the Penal Code, decided since the adoption of section 25a of article IV of the Constitution and the effective dates of the law permitting the operation of pari-mutuel betting machines (Stats. 1933, p. 2046) and of its amendatory act (Stats. 1935, p. 1943) seem to be *In re McKelvey, ante,* p. 94 [64 Pac. (2d) 1002], and *People* v. *Torrey,* 16 Cal. App. (2d) 470 [60 Pac. (2d) 900]. In the Torrey case it was said:

"Appellant maintains that the information failed to charge him with the commission of a public offense, and that the evidence failed to prove him guilty of any offense. He bases this contention upon the theory that pari-mutuel betting was legalized under a constitutional amendment which effected a repeal of those provisions of section 337a of the Penal Code, which prohibited all forms of betting and registering of bets on horse races.

"It is evident from the mere reading of the quoted provisions of section 337a of the Penal Code that it prohibited all betting and registering of bets on horse races. In 1933 the legislature adopted an act which would permit pari-mutuel betting on horse races. (Stats. 1933, chap. 769.) This act took effect upon the adoption by the people of section 25a, article IV, of the Constitution on June 27, 1933. This act permitted pari-mutuel betting on horse races conducted on duly licensed tracks where the wagers were made and placed within the enclosures containing such tracks. In 1935, section 3 of the act was amended by the addition of the following provisions:

" 'A wager made inside an enclosure under the pari-mutuel system for a principal who is not within the enclosure shall be considered a wager made within the enclosure for the purpose of this act and any activity of the principal in connection with such wager shall not be considered a wager made outside the enclosure.' (Stats. 1935, chap. 719, p. 1943.)

"We are of the opinion that the act of 1933, as amended in 1935, permitting pari-mutuel betting on horse races, did not effect a repeal of the provisions of section 337a of the Penal Code which prohibited any betting and registering of bets on horse races. It merely provided one exception under which one form of betting on horse races was permissible in California. It is clear from a study of the Act of 1933, as amended, that the legislature not only did not intend to repeal the general law prohibiting general betting and registering of bets on horse races, but intended that the law remain in force subject to one exception, namely, that pari-mutuel betting be permitted if conducted in the manner and under the conditions specified in the act."

The information in the Torrey case involved a violation of the provisions of subdivision four of section 337a of the Penal Code, while in the instant case a violation of sub-

division three of that section is charged. Subdivision four prohibits placing, recording or registering a bet or wager upon a horse race. Subdivision three prohibits receiving or holding bets on horse races. Both subdivisions are subject to the exception contained in the law permitting betting through the means of pari-mutuel machines, if the bets are placed in a pari-mutuel machine and those machines are located and the races held within enclosures containing tracks duly licensed by constituted authorities of the state.

In the instant case it is not disputed that the bet was made at the Restful Club at Balboa in the city of Newport Beach in Orange County, on a horse running in a race on the track in Narragansett Park at Pawtucket in the state of Rhode Island. ▆▆ As this track was outside the state of California, it was beyond the jurisdiction of any of its officers and could not have held any valid license by any authority of this state. Therefore, the necessary elements of the offense charged were proved when it was established that the officers or employees of the Restful Club received a bet on a race held at Narragansett Park because that track could not be licensed by California authorities, and placing the bet in pari-mutuel machines in that park could not relieve the person or persons receiving the bet from the criminal consequences of that act.

▆▆ Appellant urges that the evidence is insufficient to show that he was connected with the receiving or holding of the bet in question here. The answer to this argument requires a review of the evidence bearing upon that question. A great deal of the evidence introduced was directed towards the alleged violation of subdivision one of section 337a of the Penal Code. As appellant was not convicted of the violation of the provisions of that subdivision, we may disregard that part of the evidence and any errors committed in admitting any of it.

Robert H. Sandon was the chief investigator in the office of the district attorney of Orange County. On the morning of August 20, 1936, he gave W. A. Ralls a twenty dollar bill and retained a record of its number. Ralls was an employee of a private detective agency and was working under authority of the district attorney.

Ralls went to the Restful Club in Balboa in the city of Newport Beach. There he saw about twenty people. De-

fendants Walter Hite and John Callahan were behind a counter. Hite was taking money and making change, and Callahan was marking on charts odds on different horses as they were announced over a loud speaker in the room. Ralls went up to the counter and said to Hite, "Two dollars on Retard, number thirty-nine at Narragansett." He gave Hite the twenty dollar bill and received eighteen dollars in change.

A few minutes later the sheriff of Orange County and several of his deputies appeared, armed with a search warrant. They arrested Callahan and Hite and Anderson, who arrived at the club a few minutes later. They found the twenty dollar bill in a money box near where Hite was working. They also found other money and a large collection of sheets, charts, racing forms, run-down sheets and other such paraphernalia used by bookmakers in receiving, making and registering bets on horse races.

Two deputy sheriffs proceeded to a small room on the second floor of the Restful Club, which we will refer to as the teletype room. There they found and arrested Bassett and Wilson. Wilson told the deputies that he was in charge there. There were three telephones, a teletype, a microphone and control box, a large table, chairs, and various charts and papers described in the evidence as those used by bookmakers in receiving and recording bets on horse races. Appellant was sitting at the table with the microphone and teletype machine at his right. In a closet of this room was found an envelope and a letter with a copy of the articles of incorporation of the Restful Club. The envelope and letter were addressed to H. B. Wilson, Balboa, California. The letter was merely one of transmittal of the articles of incorporation. In the articles of incorporation H. B. Wilson was named as one of the original incorporators and directors of the Restful Club.

Wires from the microphone control box ran to the loud speaker in the first floor room which we have already described. The teletype was in operation and was recording information concerning races run and to be run on eastern race tracks which corresponded with what was described as being broadcast over the loud speaker and recorded on the run-down sheets. Somewhat similar information concerning the eastern races was found recorded on sheets found in the teletype room. Also various memoranda were found there which were described as records of bets that had been placed.

Several telephone calls were received by one of the deputy sheriffs while he was in the teletype room, one of which was detailed in the evidence. This conversation was described as follows:

"A. He called me and he said 'Is this Butch?' and I said 'Yes' and he said 'I want to bet two dollars on Lieutenant Greenock in the fifth at Narragansett' and I said 'What?', I said 'Will you spell that out for me?' and so he spelled it out and I spelled it back to make sure, Lieutenant Greenock, and he said he wanted to bet two dollars, I don't recall what he said 'Across the board' or what or some such expression that I am not familiar with and then he said 'I want to bet two dollars on Blessed Event in the Seventh race at Narragansett' and I repeated it back to him. Q. Any other conversation? A. That was practically all, there was a little more but I can't recall all of it at this time. Q. Was there anything said about the name of this party at that time? A. Yes, at the beginning of the conversation, the first thing I asked him, I said 'Who is this?' and he said 'This is Hoffman at San Clemente.' "

The deputy sheriff repeated this conversation and spelled out the names of the two horses in the presence of appellant, who remained silent. The deputy subsequently contacted Emil Hoffman of San Clemente, California, and recognized his voice as the one he had heard during the telephone conversation. Hoffman was produced as a witness and substantially admitted having had such a conversation. He also admitted having placed at the Restful Club other bets on horse races over a telephone that was listed in the telephone directory under the name of Anderson & Wilson Cafe. This telephone was located in the teletype room. The two other telephones in that room were listed in the name of H. B. Wilson.

This evidence is sufficient to connect appellant with active participation in the operation of the Restful Club and is sufficient to sustain his conviction under count one of the information. All of the necessary elements of the offense were proved by direct and undisputed evidence and, as appellant was actively engaged in the operation of the Restful Club where the Ralls bet was illegally received, his conviction must be affirmed unless there are prejudicial errors in the record.

We have studied the record and have reached the conclusion that the trial judge erred in two particulars in overruling

appellant's objections to questions asked and exhibits offered by the people and in denying his motions to strike such evidence from the record. We find no serious prejudice in the rulings on any of the other objections or motions to strike made by counsel for appellant.

▉ A district manager for the Southern California Telephone Company was produced as a witness for the people. He produced a contract for an inter-exchange private line teletype system which was admitted in evidence. The contract was between the telephone company and Eugene Normile. It showed the installation of a teletype machine at Balboa under a notation of "S. Scoby". This was later changed by the telephone company to "H. B. Wilson". How, why, by whom, or at whose direction or request the change was made does not appear. It does not appear that appellant ever heard of this contract or of the notations. Under such circumstances the contract and notations should not have been received in evidence.

Another witness was produced who knew Eugene Normile and who testified at some considerable length concerning his business. Normile was not connected with the case in any manner except through his contract with the telephone company. As this contract should not have been admitted in evidence, it follows that any evidence concerning the business of Normile should have been excluded. The contract with the telephone company and the business of Normile could have become competent evidence only if appellant could have been sufficiently connected with the contract or with Normile and his business.

▉ Appellant complains of intemperate remarks by a deputy district attorney during his argument to the jury. At the request of counsel for appellant the trial judge said: "The record will show the exception. Of course, Ladies and Gentlemen of the Jury, there isn't any evidence to show any bribery or anything in the way of racketeering and you are not to infer from the argument of the District Attorney that there is any evidence tending to show that fact or evidence of those facts." While it would have been better to have stopped the argument of the deputy district attorney on the first objection made by appellant, the error was at least partially cured by the quoted instruction.

▉ When we find errors in the record such as confront us here it becomes our duty to weigh them and all of the evi-

dence in the case with the provisions of section 4½ of article VI of the Constitution in mind. That section prohibits us from reversing a judgment for such errors as we have here unless, after a review of the entire case, we reach the conclusion that they have resulted in a miscarriage of justice.

That the crime of receiving a bet on a horse race, which bet was not placed in a pari-mutuel machine within the enclosure of a race track licensed by California authorities, was committed, is too clear to admit the possibility of any doubt. Appellant does not seriously challenge the sufficiency of this evidence but argues that his participation in the commission of the crime is not sufficiently proved. We cannot agree with this contention. There is clear and convincing evidence that appellant was actively engaged in the operation of the gambling features of the Restful Club. In addition to all the other evidence pointing to the guilt of appellant we cannot overlook his statement made at the time of his arrest that he was in charge of the teletype room. In connection with the other evidence this can only be construed as having the effect of an admission of guilt. In that room there was received over the teletype information without which the club could not have operated as a gambling resort. This information was relayed from that room to the other room, where the Ralls bet was received. The club telephones were in that room over which other bets were received. To conclude that there had been a miscarriage of justice we would have to conclude that appellant told an untruth when he admitted that he was in charge of the teletype room. It is difficult to understand how he can be heard to complain because the jury took his own statement at its face value and acted upon it. His conviction is supported by his own admission.

Under the facts of this case we cannot conclude that the errors complained of are sufficiently prejudicial to require a reversal of the judgment. The record shows that there has been no miscarriage of justice.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.