[Crim. No. 479. Fourth Dist. Sept. 23, 1943.]

THE PEOPLE, Appellant, v. FRANK SULLIVAN,
Respondent.

Robert W. Kenny, Attorney General, T. G. Negrich, Deputy Attorney General, Thomas Whelan, District Attorney, and F. H. Nottbusch, Deputy District Attorney, for Appellant.

C. Lew Byers for Respondent.

MARKS, J.—This is an appeal from a judgment and order dismissing an information charging defendant in three counts with violations of the provisions of subdivision 3 of section 337a of the Penal Code in conducting a bookmaking establishment by accepting and placing bets on horse races.

The ruling in the court below was made on the ground that the California law violated the provisions of the Fourteenth Amendment to the federal Constitution and of article I of the state Constitution by permitting the placing of bets on horse races only in legally operated pari-mutuel betting machines in duly licensed race tracks, while prohibiting all other forms of betting on horse races no matter where the bets were placed. It is argued that this results in unlawful discrimination against all those desiring to conduct bookmaking establishments and also against all those who desire to bet on horse races but are precluded from doing so because of lack of funds to pay the cost of transportation and admission to race tracks, or, who, because of distance of residence from race tracks are unable to visit them.

The constitutional limitations imposed by the Fourteenth

Amendment to the federal Constitution and the first article of the state Constitution or similar enactments have been construed in practically every jurisdiction in the country, including the Supreme Courts of the United States and of the State of California. Under rules firmly established by many decisions it would seem to be unnecessary to do more than cite a few of the many authorities establishing the proper rules to be applied here under which it is clear that the judgment must be reversed. However, the attorney general of the state and the District Attorney of San Diego County regard the case one of importance so we will extend this opinion by considering the application of the law guaranteeing to every citizen the equal protection of the laws as limited by the police powers of the state to legislate to protect the people in their health, safety, morals and general welfare "in respect to those vocations which minister to and feed upon human weaknesses, appetites, and passions," the reasonable regulation or prohibition of which come within the police powers of the states and are not prohibited by any clause of the Constitution. (*L'Hote* v. *New Orleans,* 177 U.S. 587 [20 S.Ct. 788, 44 L.Ed. 899] ; *Barbier* v. *Connolly,* 113 U.S. 27 [5 S.Ct. 357, 28 L.Ed. 923].)

When the subject of legislation falls under the police powers of the state, activities may be prohibited altogether, limited as to place and location, or, where operation is permitted, may be regulated by rules of conduct. These laws enacted under the police powers must be subject to the restriction that the prohibition, limitation or regulation, must apply to all alike who come within a reasonable classification of persons or property. (*L'Hote* v. *New Orleans, supra; Patterson* v. *Kentucky,* 97 U.S. 501 [24 L.Ed. 1115] ; *Plumley* v. *Massachusetts,* 155 U.S. 461 [15 S.Ct. 154, 39 L.Ed. 223].)

The fact that because of classification the statute does not apply to every person alike is no valid objection to its constitutionality, for classification itself presupposes inequality of application and the courts may only inquire if the classification is reasonable and founded upon some logical, natural, intrinsic or constitutional distinction between people composing a class and others not embraced within it. (*In re Weisberg,* 215 Cal. 624 [12 P.2d 446] ; *In re Sumida,* 177 Cal. 388 [170 P. 823] ; *In re Stoltenberg,* 165 Cal. 789 [134 P. 971] ; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Matthews,* 174 U.S. 96 [19 S.Ct. 609, 43 L.Ed. 909] ; *Coelho* v. *Truckell,*

9 Cal.App.2d 47 [48 P.2d 697]; *Soares* v. *City of Santa Maria,* 38 Cal.App.2d 215 [100 P.2d 1108].)

Applying these rules to the facts before us it is clear that we have but two questions to answer: 1. Does the power to prohibit or regulate betting on horse races fall within the police powers of the state? 2. Is the classification made by the statute reasonable?

The first question does not seem to be open for debate. Betting on horse races is one form of gambling. Since the adoption of the codes various forms of gambling have been prohibited by state laws while others have had no such restrictions placed upon them. (See, secs. 319, 320, 330, 331, 332, Pen. Code.) As early as 1857 a statute was passed which prohibited dealing the game of faro. Its constitutionality was upheld in *People* v. *Beatty,* 14 Cal. 566. The state and some of its political subdivisions have firmly adhered to the public policy of prohibiting commercial gambling under the police powers. (See, *Ex parte Chin Yan,* 60 Cal. 78; *Ex parte Tuttle,* 91 Cal. 589 [27 P. 933]; *In re Murphy,* 128 Cal. 29 [60 P. 465]; *In re Ah Cheung,* 136 Cal. 678 [69 P. 492]; *In re McKelvey,* 19 Cal.App.2d 94 [64 P.2d 1002]; *In re Walker,* 11 Cal.2d 464 [80 P.2d 990, 117 A.L.R. 825]; *Kyne* v. *Kyne,* 16 Cal.2d 436 [106 P.2d 620]; *People* v. *Haughey,* 48 Cal. App.2d 506 [120 P.2d 121].) The Supreme Court of the United States recognizes the right of the state to prohibit or regulate gambling and other acts which may affect public morals. (*Ah Sin* v. *Whitman,* 198 U.S. 500 [25 S.Ct. 756, 49 L.Ed. 1142]; *Murphy* v. *California,* 225 U.S. 623 [56 L.Ed. 1229, 32 S.Ct. 697].)

In *Ex parte Tuttle, supra,* the court considered the constitutionality of an ordinance of the city and county of San Francisco which prohibited wagering on horse races other than within the enclosure of the track where the races were being held. In upholding the ordinance the Supreme Court said:

"Any practice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, is a legitimate subject for regulation or prohibition by the state; and that gambling, in the various modes in which it is practiced, is thus demoralizing in its tendencies, and therefore an evil which the law may rightfully suppress without interfering with any of those in-

herent rights of citizenship which it is the object of government to protect and secure, is no longer an open question.

"The measures needful or appropriate to be taken in the exercise of this police power are determined by legislative policy, and for this purpose a wide discretion is committed to the law making body. Whether it shall entirely prohibit or only regulate by confining such practices within prescribed limits,—whether the law shall apply to every kind of gambling, or only to those games or wagers in which evil effects appear with greatest prominence,—must be determined primarily by the legislative department of the state, or of the municipality authorized to exercise this great power, which is conferred for the purpose of securing the public safety and welfare; and unless it clearly appears that a statute or ordinance ostensibly enacted for this purpose has no real or substantial relation to these objects, and that the fundamental rights of the citizen are assailed under the guise of a police regulation, the action of that department is conclusive. (*Mugler* v. *Kansas*, 123 U.S. [623] 661 [8 S.Ct. 273, 31 L.Ed. 205]; *Matter of Jacobs*, 98 N.Y. 98; 50 Am.Rep. 636; *Watertown* v. *Mayo*, 109 Mass. 315; 12 Am.Rep. 694; *Ex parte Keating*, 38 Cal. 702.) It is manifest, we think, under this rule, that the ordinance in question cannot be declared invalid."

There are many other cases in California and other jurisdictions to the same effect. (See, *Ex parte Brown*, 156 Cal. 632 [105 P. 739]; *People* v. *Torrey*, 16 Cal.App.2d 470 [60 P.2d 900]; *In re McKelvey, supra; In re Goddard*, 24 Cal. App.2d 132 [74 P.2d 818]; *People* v. *Wilson*, 19 Cal.App.2d 340 [65 P.2d 834]; *Murphy* v. *California, supra*.) In the case of *People* v. *Haughey, supra*, it was said:

"However, 'The policy of the state toward commercial gambling is clear and unequivocal. A mere superficial reference to the Penal Code reveals that commercial gambling in all of its phases has been uniformly condemned for many years. . . . There is nothing in the Horse Racing Act indicating the slightest intention to depart from the public policy of the state condemning commercial gambling. To the contrary, a determination to adhere to such policy is obvious.' (*In re Goddard*, 24 Cal.App.2d 132, 140, 141 [74 P.2d 818].) If the legislature had intended to reject this long established policy of the state prohibiting commercial gambling such an intention would have been indicated in the act and the subse-

quent amendment; the statute, however, when read in its entirety, shows a specific intention to retain the general prohibitions."

There can be no question of the right of the Legislature under the police power to regulate gambling, which includes betting on horse racing. We must next consider the reasonableness of the classification made by the statute.

As we have observed, commercial gambling, including bookmaking on horse races, has been prohibited in California for many years. Section 337a of the Penal Code, which prohibited this class of gambling, was enacted in 1909 and though amended is still in effect. In 1933 the Legislature passed what is commonly known as the Horse Racing Act. (Stats. 1933, ch. 769; Deering's Gen. Laws, 1937, Act 3421.) By the provisions of this act it was not to become effective until the people ratified a constitutional amendment approving it. This was done at an election held June 27, 1933. (Sec. 25a, art. IV, Constitution.)

The Horse Racing Act permitted betting on horse races by means of pari-mutuel machines situated within the enclosure of duly licensed race tracks. No other form of gambling on horse races was authorized and section 337a of the Penal Code was not repealed but continued in full force and effect except as modified by the provision permitting betting through pari-mutuel machines. (*In re Walker, supra; People* v. *Torrey, supra; In re McKelvey, supra; People* v. *Haughey, supra.*) Thus at no time since 1909 has bookmaking on horse races been lawful in California. Under the law defendant was and is prohibited from conducting his business of bookmaking at every place in California. No one could place a bet with him lawfully, whether at a race track or elsewhere. Thus the argument that he was discriminated against and denied the equal protection of the law seems untenable.

However, we will briefly consider the question of the reasonableness of the classification which permits the operation of pari-mutuel machines in duly licensed race tracks while prohibiting bookmaking there and elsewhere in the state. In approaching this question we must bear in mind the rules guiding us which are thus stated in *In re McKelvey, supra:*

"All presumptions are in favor of the validity of acts passed by the legislature and the classifications made by the legislature will not be disturbed by the courts unless they are 'actually and palpably unreasonable and arbitrary.' (*Radice* v. *New York,* 264 U.S. 292 [44 S.Ct. 325, 68 L.Ed. 690];

*Rainey* v. *Michel,* 6 Cal.2d 259 [57 P.2d 932, 105 A.L.R. 148].)"

Many reasons suggest themselves which support the reasonableness of the classification made by the Legislature. Parimutuel machines are only permitted at licensed race tracks where supervision, regulation and police inspection and control is a very simple matter. These machines are mechanical devices in which the odds are determined with mathematical certainty and pay-offs to the lucky are assured. On the other hand bookmaking establishments were conducted in any place where the operators might believe patrons would collect. Odds were established by the bookmakers and any reasonable police supervision was difficult. Those desiring to pursue the subject further will find ample discussion in the following cases, setting forth many reasons for upholding the same or similar classifications as reasonable: *Ex parte Tuttle, supra; In re Goddard, supra; In re Walker, supra; In re McKelvey, supra; People* v. *Haughey, supra; Smith* v. *Kentucky,* 275 U.S. 509 [48 S.Ct. 158, 72 L.Ed. 398] ; *Bryant* v. *Zimmerman,* 278 U.S. 63 [49 S.Ct. 61, 73 L.Ed. 184] ; *People* v. *Bennett,* 113 F. 515; *Levy* v. *Kansas City,* 93 C.C.A. 523 [168 F. 524, 22 L.R.A.N.S. 862] ; *People* v. *Monroe,* 349 Ill. 270 [182 N.E. 439, 85 A.L.R. 605] ; *Commonwealth* v. *Kentucky Jockey Club,* 238 Ky. 739 [38 S.W.2d 987] ; *Erlanger Kennel Club* v. *Daugherty,* 213 Ky. 648 [281 S.W. 826] ; *In re Stewart,* 174 Misc. 902 [22 N.Y.S.2d 164] ; *Missouri* v. *Thompson,* 160 Mo. 333 [60 S.W. 1077, 54 L.R.A. 950] ; *City of Shreveport* v. *Schulsinger,* 113 La. 9 [36 So. 870, 2 Ann.Cas. 69] ; *L'Hote* v. *New Orleans, supra.*

Under the foregoing authorities we are required to conclude that the classification made by the Legislature is reasonable and was made on constitutional grounds and that it may not be disturbed here. It is clear that a law adopted under the police powers is general in effect when it affects all those within a specified class but not all within the jurisdiction. The question of its being general in its application does not depend on the number within the class it purports to regulate nor the number without that class. It is general and not unconstitutional when, as here, it applies uniform rules of conduct for all those coming within the scope of its application and may not be challenged because of any denial of equal protection of the law to those on whom it operates be-

cause others differently situated and within a different legal classification may not be affected by its terms.

Defendant presents an ingenious if unconvincing argument in attempting to escape the foregoing conclusions. He says that from 1909 to 1933 all forms of betting on horse races were prohibited; that in 1933 betting on horse races was legalized. From this he draws the conclusion that since betting on horse races is now legalized he may not be prohibited from conducting his business of bookmaking. The premise on which the argument rests is not sound. Counsel overlooks the fact that bookmaking on horse races has been prohibited since 1909 and still is contrary to law. The only legalized betting on such races is through pari-mutuel machines operated in legally licensed race tracks. As defendant is not charged with operating such a machine at a place within the permission of the statute, but with operating a bookmaking establishment which is prohibited by law, he cannot escape prosecution for the illegal acts charged against him.

It is not necessary to extend this opinion further by considering the cases cited by defendant. It is sufficient to say that they do not conflict with the conclusions we have reached.

The judgment and order dismissing the information against defendant are reversed.

Griffin, Acting P. J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 21, 1943.