[Crim. No. 3755.   Second Dist., Div. Three.   June 22, 1944.]

THE PEOPLE, Respondent, v. RALPH MADDOX, Appellant.

Geo. D. Blair for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of the crime of violation of section 337a, subdivision 2, of the Penal Code, a felony, in that he unlawfully kept and occupied an apartment in Los Angeles with books, papers and paraphernalia for the purpose of recording bets upon the result of "contest, of skill, speed and power of endurance between beasts, to wit, horses." He was also accused of violation of subdivision 4 of said section, in that he did unlawfully record a bet or bets upon the result of such a contest. Trial by jury was waived. Defendant was convicted of the charge as to subdivision 2, and was acquitted of the charge as to subdivision 4. He was sentenced to imprisonment in the county jail for six months. Appellant's first contention is that the evidence was not sufficient to support the judgment of conviction. A police

officer testified that when he and four other officers entered room 241 of a hotel in Los Angeles on October 21, 1942, about 1 p. m., a lady was standing beside a table in the room upon which table there were two stacks of horse-race betting markers with pencil writing upon them, a filing cabinet in which there were betting markers, two scratch sheets, two telephones, two California Turf Digests, blank paper pads, many pencils, and crayons; that as they entered the room, the lady who was the only person therein, said, "Ralph," and stepped back from the table with a pencil in her hand; that a racing form sheet dated October 21, 1942, was on a bureau in the room, and about 30 copies of racing form sheets of various dates were in the closet; that after they had been in the room about 5 minutes, the defendant Ralph Maddox entered the room with a leather folder in his hand, which folder (it was later ascertained) contained documents including a scratch sheet bearing the date of October 21, 1942; that the testifying officer "was busy answering phones" when defendant entered, and he did not see anyone bring the defendant in, and did not know whether defendant "walked in voluntarily" or whether someone brought him in, but "they might have" brought him in; that after defendant entered the room the witness and another officer went into the hall with defendant, took him to the hotel manager and asked her who rented the room, and she said "that is the man [indicating the defendant] who rented the apartment"; that defendant then said he had rented the room but he didn't live there; that they stayed in room 241 about one hour and the "phones rang continuously until they were disconnected"; that defendant "stood around the room" while the witness and another officer answered telephones; that the witness made notations of some "of those telephone calls"; that the "phone rang and people would say, 'Hello,' and then they would hang up"; that one person said, " 'Hello. This is Mac. I want two across the board on 152,' and hung up"; that another person said, " 'Hello. Ralph? This is W. H. I want the fifth at New York— Jamaica—Alsab, ten and five; fifth at Laurel, Enterprise, one and one; 504, two to win; 156 one and one; 154, six and two,' and then he hung up"; that another person said, " 'Hello. This is Ann. This one is for Ruth. I want five to win on 811. Then I want a parlay, 887 to 906, one to win and one to place; and 887, one to win.' ' "; that another per-

son said, " 'Hello, Ralph? This is Stearns. Give me Hi Gold in the fourth at Sportsman, one to win and one to place' ''; that another person said, " 'Hello. Have you the results of the fourth at Laurel? This is S. T. . . . I want Enterprise, the fifth at Laurel, one to win and one to show; The Raider, the first at Bay Meadows, parlayed to Flying Back, the sixth at Bay Meadows, one to win.' '' It was stipulated that said witness was "qualified to testify as an expert on bookmaking matters as conducted" in Los Angeles County. The witness testified further that the articles which were on the table and on the bureau when the officers entered the room (received in evidence) were "racing paraphernalia" that "a bookmaker would use in recording bets" on horse races; that the white slips of paper in the cabinet were betting markers, and "all [the numbers on the markers] were contained in the scratch sheet for" October 21, 1942; that the names of the horses mentioned in the telephone calls which he received were on the scratch sheet for October 21, 1942. He testified further that defendant said he had rented that room in May, that he didn't know "how the phones got in that room [room 241 —one telephone was registered to room 242 and the other to room 240]," that the bathrobe and slippers [which were in the closet] were his, that sometimes he slept in that room, and that "he had been arrested by practically every vice squad in the city."

The lady who was in the room when the officers entered was Barbara Ames, and she was accused jointly with defendant in the information herein. She pleaded guilty to the charge of violation of said subdivision 2 of section 337a of the Penal Code; and the charge concerning said subdivision 4 was dismissed as to her.

It was stipulated that defendant had written his name on a certain document which was received in evidence. A police officer, who according to a stipulation of the parties was qualified to testify as a handwriting expert, testified that some of the numerals on the betting markers which were in the cabinet, and some of the numerals on the betting markers which were in the two stacks of betting markers on the table, were made by the same person who had written on the document in evidence.

Defendant pleaded guilty on January 22, 1943, to the said charge of violation of said subdivision 2 of section 337a of the Penal Code. On March 4, 1943, defendant's plea of guil-

ty was set aside and his plea of not guilty was reinstated. Defendant testified that he entered the plea of guilty because his former attorney had told him that he thought it was the best thing to do. He testified further, in explanation of the change of plea, that when he wrote the facts of the case in his application for probation he wrote that he was not guilty, and the probation officer said he would recommend that the case be tried.

Defendant testified that he was arrested in the hallway of the hotel, while he "was going up there to see a gentleman about some furs"; that the arresting officer took him into room 240, and then into room 241; that when the officer told him in room 241 that he wanted the defendant "to try these shoes on [referring to the slippers in that room], defendant said, "It is unnecessary, I go with a girl that lives here"; that the girl's name was Dorothy Ward and he visited her about two or three times a week; that the leather folder he had with him (when he entered) contained "paraphernalia pertaining" to his fox and mink farm at Big Bear; that he "never did occupy" room 241, "did not register for it or anything" and was not "making book there"; that he did not say to anyone that he was "occupying—making book in that room"; that he "never recorded any bets over those phones" in his life; that he did not know what a betting marker was; that when the officers asked the manager of the hotel whether defendant rented the room, she said, "I don't know who rented the room"; that he did not "remember of writing any numerals on any sheets there"; that he probably did "some figuring" on some slips of paper on three or four occasions when he was visiting the girl in the evenings in that room; that every evening he "had some daily business to take care of" and he would make various figures on pieces of papers to "keep track" of the breeding of foxes and minks at the farm, which figures were the distinguishing marks on the ears of foxes and minks and on the pens where the foxes and minks were kept; that he might have written the figures if he "was checking on some particular pelts" that he had brought in, but the figures were not for his records and he would not take them home and file them.

Barbara Ames, who was in the room when the officers entered, testified that she was with Dorothy Ward when Dorothy rented that room; that an officer brought the defendant into the room; that she (witness) had gone to the room to visit

Dorothy, and Dorothy had requested her to "answer the phone" and "make notations" while Dorothy went across the street to "get a coke."

Defendant argues that the testimony of the police officer should be disbelieved for the reason, among others, that the officer testified on direct examination that defendant entered the room and was arrested therein, and testified on cross-examination that he did not know whether defendant walked in voluntarily or whether someone brought him in but "they might have" brought him in. The credibility of the witnesses was a matter for the determination of the trial court. The evidence was sufficient legally to support the judgment of conviction.

Defendant's second contention is that the court erred in refusing to grant defendant's motion for a continuance of one day. Defendant's counsel of record (at the time of trial) was not present when the case was called for trial. An attorney, who was a partner of defendants' then counsel of record, appeared in court when the case was called for trial on May 19, 1943, and stated that the attorney of record was engaged in a jury trial of an action for damages in another department of the court, that he (the partner) was unfamiliar with the present case, and that he moved for a continuance. The court said, "This is one of those kinds of cases that you do not have to be very familiar with, this type of case." The attorney then said, "I can understand that, but Mr. Fainer . . . has some defense, the nature of which I am not aware of." The trial judge reviewed the record of the proceedings. The arrest was on October 21, 1942. Trial was set for December 16, 1942, and the case was later continued at the request of defendant to January 22, 1943, at which time the defendant pleaded guilty and the matters of probation and sentence were set for February 18th. On February 18th, on motion of defendant, said matters were continued to March 4th. On March 4th the plea of guilty was set aside, and the trial was set for April 26th. On April 14th, on motion of defendant, the trial was continued to May 19, 1943. When the court denied the motion for a continuance, the attorney then asked the court to "put it over until tomorrow, to give me a chance to study it." The court denied that request, and stated that it would be about an hour before a case then on trial would be finished. The trial in the present case was commenced about 1½ hours after the motion for continuance was denied.

Whether the case should have been continued was a matter within the discretion of the trial court. (*People* v. *Russell* (1909), 156 Cal. 450, 456 [105 P. 416].) It was not an abuse of discretion to deny the motion for a continuance.

■ The last contention of defendant is that the judgment is in violation of section 1 of Amendment XIV of the Constitution of the United States. He argues that "to grant the right to those at a licensed track to legally bet on horse races, and to make it a crime to do the same thing away from a licensed track, would seem to violate" the said portion of the Constitution which guarantees equal protection of the law to all of the people. Said contention is not sustained. (*People* v. *Sullivan* (1943), 60 Cal.App.2d 539 [141 P.2d 230].)

The judgment of conviction and the order denying the motion for a new trial are affirmed.

Desmond, P. J., and Shinn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1944.