[Crim. No. 333.   Fourth Appellate District.—September 15, 1936.]

THE PEOPLE, Respondent, v. GUY TORREY, Appellant.

Hodge & Evans for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

MARKS, J.—This is an appeal from an order denying appellant's motion for new trial. He was charged by an information filed by the district attorney of San Bernardino County with violation of the following provisions of section 337a of the Penal Code:

"Every person . . . who, whether for gain, hire, reward, or gratuitously, or otherwise, at any time or place, records, or registers any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; . . . is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year."

Appellant was convicted, his motion for new trial was denied and this appeal followed.

The particular violation of the provisions of the section which we have quoted consisted of accepting and registering bets on horse races which were being held at the race track near the city of Arcadia in Los Angeles County. The bets were accepted by appellant at the Pastime Club in the city of Ontario in San Bernardino County. He maintains that he transferred the bets to the 322 Club in the same city, which club telephoned them to its representative in the city of Arcadia. It is contended that the representative of the 322 Club in Arcadia then took the bets into the race track where they were placed in the pari-mutuel machines by another representative of the club.

Appellant maintains that the information failed to charge him with the commission of a public offense, and that the evidence failed to prove him guilty of any offense. He bases this contention upon the theory that pari-mutuel betting was legalized under a constitutional amendment which effected a repeal of those provisions of section 337a of the Penal Code, which prohibited all forms of betting and registering of bets on horse races.

It is evident from the mere reading of the quoted provisions of section 337a of the Penal Code that it prohibited all betting and registering of bets on horse races. In 1933 the legislature adopted an act which would permit pari-mutuel betting on horse races. (Stats. 1933, chap. 769.) This act took effect upon the adoption by the people of section 25a, article IV, of the Constitution on June 27, 1933. This act permitted pari-mutuel betting on horse races conducted on duly licensed tracks where the wagers were made and placed within the enclosures containing such tracks. In 1935 section 3 of the act was amended by the addition of the following provisions:

"A wager made inside an enclosure under the pari-mutuel system for a principal who is not within the enclosure shall be considered a wager made within the enclosure for the purpose of this act and any activity of the principal in connection with such wager shall not be considered a wager made outside the enclosure." (Stats. 1935, chap. 719, p. 1943.)

We are of the opinion that the act of 1933, as amended in 1935, permitting pari-mutuel betting on horse races, did not effect a repeal of the provisions of section 337a of the Penal Code which prohibited any betting and registering of bets on horse races. It merely provided one exception under which one form of betting on horse races was permissible in California. It is clear from a study of the act of 1933, as amended, that the legislature not only did not intend to repeal the general law prohibiting general betting and registering of bets on horse races, but intended that the law remain in force subject to one exception, namely, that pari-mutuel betting be permitted if conducted in the manner and under the conditions specified in the act.

Appellant's argument that the information failed to charge him with the commission of a public offense, and that

the evidence failed to show the commission of a public offense, is based on the further theory that it was necessary to allege and prove as a part of the case against him that the bets taken by him in Ontario were not placed in the parimutuel machines at the Arcadia track. This contention has been disposed of in *In re Lord,* 199 Cal. 773 [250 Pac. 714], where it is said:

"The further contention of petitioner that there is a radical defect in said pleading by reason of the absence therefrom of an allegation that the said Nellie Nash was not afflicted with an incurable disease, ailment, or injury is equally unfounded. The provision of said section 8½ permitting more than four grains of morphine to be prescribed or furnished to a patient suffering from an incurable disease, ailment, or injury is an exception to the general rule laid down by section 8½ of said act making it an offense to prescribe or furnish more than four grains of morphine as a daily treatment, and is contained in a proviso to the definition of said offense as contained in said section 8½. The authorities in this state are without conflict 'that such exceptions and provisions were to be negatived in the pleading only where they are descriptive of the offense or define it, and that where they afford matter of excuse merely, they are to be relied on in defense'. (*Ex parte Hornef,* 154 Cal. 355, 360 [97 Pac. 891]; *Ex parte Greenall,* 153 Cal. 767 [96 Pac. 804]; *Matter of Application of Lieritz,* 166 Cal. 298 [135 Pac. 1129]; *People* v. *H. Jevne Co.,* 179 Cal. 621 [178 Pac. 517].) Petitioner appears to concede that this is the unquestioned law in this state, but contends that it has no application to the present case, for the reason, so petitioner asserts, that the complaint failed to allege that he had committed any act prohibited by the terms of the statute and therefore stated no public offense against him. The offense denounced by section 8½ was that of furnishing by a physician to his patient of more than four grains of morphine as a daily treatment and the complaint in apt language charges this offense and according to the authorities above stated this was all that was required. If there were any exceptions to this rule within which petitioner might come and thus excuse himself from the charge so alleged, the authorities already cited declare that he may show such excuse as a matter of defense."

Appellant urges that the court erred in failing to grant his motion for an instructed verdict at the close of the People's case, and also his second motion for an instructed verdict at the close of the evidence. What we have already said disposes of the first contention. ■ However, if it be assumed that it were necessary for the People to prove that some of the bets received by the appellant were not placed by him in the pari-mutuel machines in Arcadia we have concluded that the evidence presented by the People was sufficient to establish this fact.

Appellant received the bets at the Pastime Club in the city of Ontario which is a number of miles distant from the city of Arcadia. In the Pastime Club was a loud speaker which announced each race at its start. One of the witnesses for the People testified as follows:

"Q. What was the shortest interval of time that elapsed between the time you bought the ticket, that is made the bet, and the race was run? A. Well I think one ticket that I bought there was an interval of about five minutes from the time the ticket was bought until the horses had started, but there were several other people buying tickets after I had bought that, before the race, running right up to the time they said they were off. Q. Was it announced there by Mr. Torrey, or by someone else from the speaker, when the horses actually took off? A. From the speaker, Mr. Torrey never did. Q. In relation to that time when it was announced that the races were starting, when did Mr. Torrey last accept bets? A. I don't recall his having refused any before the race started. It seemed to me, when I was standing there at the window, that they bet right up to the time the announcement was made that they were off. Q. As you recall, the bets were accepted by Mr. Torrey up until the time the races started? A. Yes, sir. Q. Is that true in connection with each race? A. I don't recall any race where there was any exception. Q. You don't recall any race in which there was a quiet interval when no bets were accepted by Mr. Torrey before the race started? A. The only quiet interval was the time between the time they told us they were off and the time they announced the winner."

Arcadia is distant from Ontario a number of miles. All telephone wires into the race track were closed during the running of each race and no bets were received in the pari-

mutuel machines after the horses went to the post. There were no direct telephone or telegraph wires into the race track and no way for anyone on the outside to communicate with the race track by telephone or telegraph during the running of the race. If appellant, as the evidence indicates, accepted bets up to the time a race started in Arcadia it is evident that it would have been impossible to have placed the bets so accepted in the pari-mutuel machines at the race track.

The evidence offered by appellant shows that he was a member of the 322 Club and as such member placed with the club the bets accepted by him prior to fifteen minutes before the start of a race. He had no other means of placing his bets and the 322 Club did not accept any bet within the fifteen-minute interval preceding the start of the race. From this evidence it is clear that appellant could not have placed in the pari-mutuel machines at the race track any bets accepted by him during the period of fifteen minutes preceding the actual start of the race.

The foregoing facts amply justified the trial judge in denying both motions made by appellant for instructed verdicts in his favor.

One of the grounds upon which appellant made his motion for a new trial was newly discovered evidence which was set forth in an affidavit made by one of his counsel, an affidavit made by the chief of police of Ontario, an affidavit made by the operator of a pari-mutuel machine at the Arcadia race track, and an affidavit made by I. E. Henderson, manager of the 322 Club.

An examination of these affidavits shows that the trial court properly denied the motion for new trial on the ground of newly discovered evidence. The affidavit of the chief of police was directed merely to the manner of the operation of the 322 Club and stated facts supporting the conclusion of the affiant that that club was not operated in a manner contrary to law. We are not particularly concerned with the operations of that club except in so far as it purported to place the bets taken by appellant. Nor are we particularly interested in opinions concerning the legality of the operations of the 322 Club. It is not on trial. This affidavit was merely corroborative of abundant undisputed evidence in the record which in our opinion is not controlling in the case.

The affidavit of the operator of a pari-mutuel machine merely sets forth that an employee of the 322 Club had almost daily placed bets with him in the Arcadia race track. If appellant considered this evidence material there seems to be no very good reason why it could not have been obtained and produced at the trial. The bets were placed by an employee of the 322 Club who was known to appellant, and appellant could, with slight industry, have ascertained this information prior to his trial by interrogating this employee. Further, the evidence of the operator merely tends to corroborate other undisputed evidence in the record and is merely cumulative.

The affidavit of I. E. Henderson contains no statement of any new evidence which would have justified the trial judge in granting a new trial.

We do not wish to be understood as indicating or expressing any opinion upon the legality of the practice of appellant in accepting bets in Ontario which were actually placed in the pari-mutuel machines at the race track. A decision of that question is unnecessary here.

The order appealed from is affirmed.

Barnard, P. J., and Jennings, J., concurred.