[Crim. No. 4153. In Bank.—June 30, 1938.]

In the Matter of the Application of WILLIAM WALKER for a Writ of Habeas Corpus.

John W. Preston, Irwin H. Roth, Edgar B. Hervy, John T. Holt and Preston & Preston for Petitioner.

Pierce & Sherwin and Morris Lavine, as *Amici Curiae,* on Behalf of Petitioner.

Buron Fitts, District Attorney, and Alexander H. Van Cott and Jere J. Sullivan, Deputies District Attorney, for Respondent.

THE COURT.—This is a petition for a writ of *habeas corpus.*

Petitioner was charged with a violation of section 337a, subdivision 3, of the California Penal Code, making it a crime to receive, hold, or forward a sum of money or other thing of value, to be placed as a bet. The stipulated facts show that on December 29, 1937, in the city of Los Angeles, the complaining witness solicited petitioner to place a $2 bet on a certain horse in a race to be run at the licensed race track at Santa Anita, California. Petitioner agreed to do this, and charged a fee of 10 per cent, or 20 cents, for this service. Thereafter petitioner telephoned his representative in the vicinity of the race track, instructed him to place the bet, and the representative went within the enclosure and purchased a ticket which entered the bet through the pari-mutuel machine. When the race was run, petitioner informed the complaining witness of the result, and was thereupon arrested. At the preliminary hearing, he was held for trial, and sought this writ.

Petitioner is obviously guilty of a violation of the terms of said section 337a (3) of the Penal Code. The question before us is whether that section is operative under the facts set forth above, or whether it is inapplicable by reason of the provisions of the ''Horse Racing Act'' of 1933, as amended in 1935. (Deering's Gen. Laws, Act 3421.)

The said statute provides for licensed horse racing, and establishes a regulated form of wagering on races under what is known as the ''pari-mutuel'' system, the bets being placed through the pari-mutuel machine or ''totalisator'' located inside the race track enclosure. A legal wager could be made

under the act only through the machine, within the enclosure, and only on the dates for which horse racing is licensed. Where the conditions laid down by the act are followed, wagering on horse races is legal, and therefore the statute creates an exception to the general prohibitions contained in the Penal Code. But the act does not purport to repeal section 337a of the said code. In section 3 of the act it is stated: "All other forms of wagering or betting on the result of a horse race shall be and remain illegal and any and all wagering or betting on horse races outside the enclosure where such horse races shall have been licensed by the board shall be and remain illegal." Section 15 similarly declares that all other forms of wagering shall be punishable as provided in the Penal Code. (See *People* v. *Torrey*, 16 Cal. App. (2d) 470 [60 Pac. (2d) 900]; *In re McKelvey*, 19 Cal. App. (2d) 94 [64 Pac. (2d) 1002].) It seems clear, in general, that the act contemplated the legalizing of a specified type of regulated wagering by spectators at the races, and as incidental to the supposed social and sporting interest in the actual races. It is equally clear that there was no intention to authorize bookmaking or betting at pool-rooms or other establishments, as a purely gambling venture, away from the track. The argument to the voters, submitted at the time the measure was presented for popular vote, stated: "Wagering will be confined to licensed race track enclosures—thus aiding in the elimination of pool rooms and such other undesirable places."

■ In 1935, however, an amendment was enacted, adding the following to section 3. "A wager made *inside* an enclosure under the pari-mutuel system *for a principal who is not within* the enclosure shall be considered a wager made within the enclosure for the purpose of this act and *any activity of the principal* in connection with such wager shall not be considered a wager made *outside* the enclosure." It is upon this amendment that petitioner relies. The meaning of the amendment is not at all clear. Its purpose seems to be to permit betters to place wagers without actually coming to the track to see the horse race. The better, called a "principal" in the amendment, may apparently telephone or telegraph his bet, or otherwise forward directions with someone who attends the race, or to someone who is inside the enclosure, who then makes the wager through the machine in a lawful manner. The amendment provides that the "prin-

cipal'', that is, the man who makes the wager, may do this, and *any activity by him* is not to be considered an illegal wager.

But what of the person to whom the directions are given, the agent of the better? The amendment is silent as to him. It legalizes the activity of the ''principal'' only. However, if the agent is actually located within the enclosure and places the bet there, he would seem to be actually legally within the provisions of the entire statute, for if an absent principal may make a bet, and a bet is legal when placed within the enclosure, the activity of the agent in placing it there cannot be criminal. This much we may concede from te language of the original statute taken together with that of the amendment.

But the conduct of petitioner goes one step further. Instead of an agent of the *principal* at the track, we have an agent of the *agent* there. The same thing is accomplished, namely, the placing of a bet for an absent principal. But a new element has entered: the agent is not at the track but is located in any place, no matter how distant, and he himself has a subagent at the track to place the bets. Petitioner argues that what the principal may do himself, he may do through an agent, and that an agent may under ordinary circumstances delegate his duties to a subagent. This may be perfectly true as a matter of the general law of agency, but it does not solve the problem presented here with respect to the scope of this statutory exception to our general gambling laws. Under petitioner's view, commercialized gambling conducted away from the track would be permitted to flourish. Individuals could establish betting centers anywhere, solicit, and place bets in any amount, so long as they communicated the amounts to the track and had the bets placed there through the machine. If this was the purpose of the amendment, it radically changed the original statute and eliminated most of the protective regulations designed to prohibit widespread commercial gambling on horse races. Before such an interpretation can be upheld, the statute must clearly compel it. The statute before us does not. The only thing clear about the amendment is that the principal or better does not commit any crime. But the actions of the commercial solicitor of bets, operating outside the track, receiving bets from others and never placing them himself in the manner authorized by the law, do not come within the

protection of the 1935 amendment. This being so, those acts are punishable under the provisions of the Penal Code.

These views are in accord with those reached by the District Court of Appeal in *In re Goddard*, 24 Cal. App. (2d) 132 [74 Pac. (2d) 818], wherein it appeared that the petitioner conducted a business at a particular place for the purpose of accepting wagers on commission, and having them placed by his employee within the enclosure. In that case the court said (p. 825) : ''Section 3 of the Horse Racing Act, as amended, affords no defense for one who maintains and operates, as petitioner herein maintained and operated, an establishment outside the track enclosure for the purpose of aiding, soliciting, encouraging and promoting commercialized gambling upon the results of races at which neither he nor his so-called 'principal' are spectators. The claim, therefore, that such conduct and acts are within the purview of the Horse Racing Act is a mere subterfuge and an attempt to circumvent the established policy of the state against commercial gambling, and is without legal sanction either in the Horse Racing Act as originally adopted or as subsequently amended.'' ▮ Although the stipulation in the instant case does not disclose that petitioner maintained a place of business for his operations, and only one act of soliciting is charged herein, we see no material difference, in so far as the present statute is concerned, between soliciting bets on the street or in a shop, for in each case the acts of the agents take place outside the enclosure.

The writ heretofore issued is discharged and the petitioner remanded to custody of the sheriff of Los Angeles County.

Rehearing denied.