[No. B012061. Second Dist., Div. Three. July 28, 1986.]

ADVANCED DELIVERY SERVICE, INC., et al.,
Plaintiffs and Appellants, v.
DARYL F. GATES, as Chief of Police, etc., et al.,
Defendants and Respondents;
CALIFORNIA HORSE RACING BOARD et al.,
Interveners and Respondents.

968

**COUNSEL**

Donald J. Boss for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Lewis N. Unger, Assistant City Attorney, and Byron R. Boeckman, Deputy City Attorney, for Defendants and Respondents.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Marilyn K. Mayer, Deputy Attorney General, Iverson, Yoakum,

Papiano & Hatch and John A. Slezak for Interveners and Respondents.

## OPINION

**KLEIN, P. J.**—Plaintiffs and appellants Advanced Delivery Service, Inc., a corporation (ADS) and Nance Outlaw (Outlaw) appeal from a summary judgment entered in favor of defendants and respondents Daryl F. Gates, Chief of Police of the City of Los Angeles (Gates), J. Stroh, Chief of Police of the City of Inglewood (Stroh), and interveners and respondents California Horse Racing Board (Board) and Hollywood Park, Inc. (Hollywood Park).

A scheme whereby a messenger service procures pari-mutuel tickets for clients not present at the race track violates Penal Code section 337a (section 337a), which is a constitutional statute prohibiting bookmaking. Therefore, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 1980, ADS and Outlaw filed a complaint for declaratory and injunctive relief, naming as defendants Gates and Stroh and alleging, inter alia: ADS is a duly licensed messenger service which operates a business of receiving and delivering various items at the request of customers for a fee. Outlaw is an individual whose hobby is handicapping and placing bets on horses. Outlaw likes to bet on horses, but on occasion is unable to make the trip to Hollywood Park for that purpose, and requires an agent to do so for her. ADS has been requested by Outlaw to pick up money and instructions, purchase pari-mutuel tickets at Hollywood Park and return same to Outlaw.

A proposed contract between ADS and Outlaw covering their transaction reads in relevant part: "[ADS] is hereby authorized to purchase pari-mutuel tickets for [Outlaw], . . . Money or funds delivered to [ADS] does not constitute a wager. Money or funds delivered to [ADS] shall upon delivery to [ADS] be the funds of [ADS]. The customer delivering said funds shall be a creditor of [ADS]. [ADS] is authorized to purchase pari-mutuel tickets at [Hollywood Park], in accordance with instructions given to it by customer. In consideration of said purchase, [ADS] charges the customer a fee of $____ for the purchase of pari-mutuel tickets. Said fee is payable in advance and regardless of the outcome of the event to which the pari-mutuel ticket

relates. Neither [ADS nor] any of its agents shall be entitled to any further compensation."[1]

The complaint further admitted that the proposed conduct would be in violation of section 337a, and ADS and Outlaw would be subject to arrest and prosecution were they to engage in the proposed activity.

The complaint prayed for: (1) a declaration that section 337a is inapplicable to plaintiffs' proposed activities; (2) if section 337a is applicable, a declaration the statute is unconstitutional on its face and as applied; and (3) preliminary and permanent injunctions to enjoin defendants from prosecuting plaintiffs for the proposed conduct.

On September 16, 1980, ADS and Outlaw obtained an order to show cause why an injunction should not issue. On October 14, 1980, their application for a preliminary injunction was denied. On November 17, 1980, motions for leave to intervene interposed by Hollywood Park and the Board were granted. Answers were filed alleging the proposed activity was in clear violation of section 337a.

On August 7, 1981, the trial court granted all defending parties' motions for summary judgment, dismissing the complaint against each of them. The trial court concluded the proposed activity is proscribed as a matter of law by section 337a, which section is not unconstitutional on its face, and there could be no defense of selective enforcement or invidious discrimination against these plaintiffs.

Judgment was entered on October 9, 1981. On November 10, 1981, plaintiffs filed a timely notice of appeal. Nearly four years later, on July 29, 1985, plaintiffs filed their opening brief on appeal.

CONTENTIONS

ADS and Outlaw concede their proposed activity violates the letter of the law, but contend: (1) Business and Professions Code sections 19594 and 19595 (sections 19594 and 19595) allow for an exception; and (2) under present day conditions, the prohibition against the receiving, holding or forwarding of money to be bet on contests of skill, speed or endurance of horses should be held invalid.

---

[1]Inconsistent with the contract, ADS' president and Outlaw in their depositions testified that ADS would be placing wagers at Hollywood Park on behalf of the absent Outlaw, who would receive credit and reimburse ADS and need not physically transfer her funds to ADS prior to the race on which she wagered.

DISCUSSION

1. *Standard of appellate review.*

■ Summary judgment is properly granted only if no material fact exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 446 [213 Cal.Rptr. 314].) When moving for summary judgment, it is the defendant's burden to rule out all possible merit to plaintiff's action. (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445].) The trial court must decide whether a triable issue of fact exists (*Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 8 [151 Cal.Rptr. 570]), and when the sole remaining question is one of law, it is the duty of the trial court to determine the issue of law. (*Coast-United Advertising, Inc.* v. *City of Long Beach* (1975) 51 Cal.App.3d 766, 769 [124 Cal.Rptr. 487].)

■ Because the determination of the trial court is one of law based upon the papers submitted, the appellate court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) However, a motion for summary judgment is addressed to the sound discretion of the trial court, so that absent a clear showing of abuse, the judgment will not be disturbed on appeal. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

These rules govern our review of this case.

2. *Historical background and relevant statutes.*

Section 337a, enacted in 1909, sets forth the general prohibitions against, inter alia, bookmaking, holding or forwarding bets, and making or accepting bets. (*People* v. *Haughey* (1941) 48 Cal.App.2d 506, 510 [120 P.2d 121].)

Section 337a provides in pertinent part: "Every person, [¶] . . . . [¶] 3. Who, whether for gain, hire, . . . or otherwise, receives, holds, or forwards, . . ., in any manner whatsoever, any money, . . . to be . . ., bet or wagered, . . ., upon the result, . . ., of any trial, . . ., or contest, . . ., of skill, speed or power of endurance of . . ., or between . . ., beasts, . . .; or [¶] . . . . [¶] 6. Who lays, makes, offers or accepts any bet or bets, . . ., upon the result, . . . [of such a contest] is punishable by imprisonment in the county jail for a period of not more than one year or in the state prison."

"In 1933 the legislature adopted a statute commonly referred to as the 'Horse Racing Act' (Stats. 1933, chap. 769) which took effect upon the adoption by the people of section 25a, article IV, of the Constitution on June 27, 1933. This act permitted pari-mutuel wagering on horse races conducted on duly licensed tracks where the wagers were made and placed within the enclosures containing such tracks."[2] (*People* v. *Haughey, supra,* 48 Cal.App.2d at p. 510.) The Horse Racing Act (the Act) "did not repeal section 337a of the Penal Code prohibiting general betting and registering of bets on horse races, but did no more than to create an exception under certain limited circumstances." (*Ibid.*)

The current and relevant law re pari-mutuel wagering appears in Business and Professions Code sections 19593 through 19595.

Business and Professions Code section 19593 provides: "No method of betting, pool making, or wagering other than by the parimutuel method shall be permitted or used by any person licensed under this chapter to conduct a horse racing meeting."

Section 19594 states: "Any person within the inclosure where a horse racing meeting is authorized may wager on the result of a horse race held at that meeting *by contributing his money* to the parimutuel pool operated by the licensee under this chapter. Such wagering is not unlawful, any other law of the State of California to the contrary notwithstanding." (Italics added.)

Lastly, section 19595 declares: "Any form of wagering or betting on the result of a horse race other than that permitted by this chapter is illegal. Also illegal is any wagering or betting on horse races outside an inclosure where the conduct of horse racing is licensed by the board."

These statutes clearly limit the pari-mutuel wagering exception carved out from section 337a to persons *within the enclosure* contributing their *own money* to a *pari-mutuel pool* and betting on the result of a horserace *held at that meeting.*

a. *Betting by agents on a commercial basis always prohibited.*

In 1935, the Act was amended by adding another exception to allow a wager to be made by an agent inside an enclosure under the pari-mutuel

---

[2]In 1941 the Act and its amendments were repealed, consolidated and revised to appear in chapter 4, section 19400 et seq. of the Business and Professions Code. (*People* v. *Haughey, supra,* at p. 510.) Chapter 4 as enacted in 1941 was repealed by Statutes 1959, chapter 1828, section 1, page 4344, and the Act was recodified in a new chapter 4, added by Statutes 1959, chapter 1828, section 2, page 4345.

system for a principal who was not within the enclosure, without violation of section 337a. (Former section 19595; *People* v. *Haughey, supra,* 48 Cal.App.2d at p. 510.) This amendment arguably would have permitted the activity proposed herein. However, appellate decisions consistently construed former section 19595 as not allowing such conduct. Before it was repealed in 1953, the amendment was tested in the courts, and interpreted so as to preclude agent/principal betting on a commercial basis.

*In re Walker* (1938) 11 Cal.2d 464, 468-469 [80 P.2d 990, 117 A.L.R. 825], in reviewing the statute, concluded "[t]he only thing clear about the amendment is that the principal or better does not commit any crime. But the actions of the *commercial* solicitor of bets, operating outside the track, receiving bets from others and never placing them himself in the manner authorized by the law, do not come within the protection of the 1935 amendment. This being so, those acts are punishable under the provisions of the Penal Code." (Italics added.)

Three years after *In re Walker,* the *Haughey* court dealt with the fact situation where a defendant set up a business requiring its customers to sign a contract as principal designating defendant to act as an agent for a commission to procure pari-mutuel tickets within the enclosure of the race track. (*People* v. *Haughey, supra,* 48 Cal.App.2d at p. 509.) In affirming defendant's conviction of violating section 337a, the *Haughey* court observed "[t]he issue presented herein is whether an agent who solicits wagers on a *commercial* basis outside the enclosure of a race track and thereafter personally places the bets in a pari-mutuel machine at the track is protected by the exception set out in the 1935 amendment . . . . [¶] [While] [t]he meaning of the 1935 amendment has never been made altogether clear[,] . . . '[t]he policy of the state toward *commercial* gambling is clear and unequivocal. A mere superficial reference to the Penal Code reveals that commercial gambling in all of its phases has been uniformly condemned for many years. . . . There is nothing in [the Act] indicating the slightest intention to depart from the public policy of the state condemning commercial gambling. To the contrary, a determination to adhere to such policy is obvious.' (*In re Goddard,* 24 Cal. App. (2d) 132, 140, 141 [74 Pac. (2d) 818].)" (*Id.,* at p. 511, italics added.)

Similarly, *People* v. *Tompkins* (1952) 109 Cal.App.2d 215, 221-222 [240 P.2d 356], held *former* section 19595 did not legalize taking bets to the track for others on a *commercial* basis. A contrary interpretation would "permit commercialized gambling conducted away from the race track to flourish. It would permit the solicitation and acceptance of bets in any amount so long as such bets were transmitted or communicated to the track and there placed through the pari-mutuel machine. To hold that section

19595 . . . immunized the practices of appellant herein would be to ascribe to the Legislature an intent to eliminate most of the protective regulations designed to prohibit widespread commercial gambling on horse races. Before such a legislative intent can be assumed the statute must clearly compel it . . . ." (*Id.*, at p. 221.)

Review of the cases thus discloses the courts continually and consistently have narrowly construed the limited pari-mutuel wagering exception to the broad prohibition against bookmaking.

3. *Arguments of ADS and Outlaw are without merit.*

ADS and Outlaw recognize their proposed activity would violate section 337a, but present two arguments why the statute should not apply to them.

 a. *Contrary to appellants' assertion, ADS would not be betting its own money.*

Appellants submit the proposed activity fits within section 19594's *exception* because ADS would be betting *its own money*, within the enclosure, to the pari-mutuel pool. In support of their contention, appellants rely on the language of the proposed contract which provides "[m]oney or funds delivered to [ADS] shall upon delivery to [ADS] be the funds of [ADS]."

This facile argument must fail, as it elevates form over substance and errs in equating possession with ownership. "In the absence of special circumstances, *moneys received by one in the capacity of agent are not his,* and the law implies a promise to pay them to the principal on demand." (*Savage* v. *Mayer* (1949) 33 Cal.2d 548, 551 [203 P.2d 9], italics added.) By artful drafting of its contract, ADS cannot evade the reality that it would be acting as agent for its clients, that it would be wagering the funds for its clients' accounts, and that the pari-mutuel tickets and any winnings would be the property of its clients. As discussed above, the cases have held such a scheme to be violative of section 337a.

 b. *Any change in the law is a matter for the Legislature.*

ADS and Outlaw further urge that because of greater acceptance of gambling, the prohibition on the forwarding of money to be wagered on horse racing is an archaic and unreasonable exercise of the police power. Appellants point in particular to the introduction of the state lottery, Hollywood Park's promotional events, early bird wagering, advertising in general to solicit gambling, and wagering within the enclosure permitted on out-of-state races (Bus. & Prof. Code, § 19596).

■ It has long been settled that the police power extends to objectives in furtherance of the public peace, safety, morals, health and welfare (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 160 [130 Cal.Rptr. 465, 550 P.2d 1001], and the prohibition or regulation of betting on horseraces falls within the power (*People* v. *Sullivan* (1943) 60 Cal.App.2d 539, 542 [141 P.2d 230]). Not only does the Legislature have the power to completely prohibit wagering on horse races, but it may also limit such wagering to persons physically present within the enclosure. (*Id.*, at pp. 542-543.) ■ While police power is elastic in response to arising conditions, in determining the validity of a legislative measure under the power, our sole concern is whether the measure reasonably relates to a legitimate governmental purpose, which is not to be confused with the wisdom of the measure. (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at pp. 159-160.)

■ We find the objectives of the statutes reasonable, and the rationales for prohibiting the proposed conduct are both numerous and readily apparent.

As the law now stands, if a person wants to wager on a horse race and not commit a crime, that individual is required to travel to one of only 12 racetracks located within the State of California; one cannot bet through a convenient messenger service.[3] Such a messenger service would tempt persons to bet and encourage messengers to make book.

Allowing gambling through the medium of a messenger service would enable unregulated commercial off-track betting to thrive. It would become impossible for law enforcement agencies to police bookmakers, as any person receiving a wager at an off-track site could contend he or she was merely en route to the track to place the money through the pari-mutuel machines. Bookmaking would flourish, depriving the tracks and the State of California of revenues derived from pari-mutuel wagering. Difficulties would arise in ensuring that a messenger service properly took the funds received from an unwary consumer and bet them through the pari-mutuel windows.

Undesirables could easily establish messenger services and become involved in wagering, undermining the licensing requirements of the Act. "Known bookmaker[s]" and "tout[s]," and others, excludible from the enclosure under Business and Professions Code section 19572, would be able to participate in pari-mutuel wagering through messenger services. In addition to obviating these potential problems, limiting wagering to the pari-mutuel system within the enclosure protects the public, as the odds are

---

[3]Pursuant to Evidence Code sections 452 and 459, we judicially notice there are 12 horse racing tracks in California.

determined with mathematical certainty and pay-offs to the winners are assured. (*People* v. *Sullivan, supra,* 60 Cal.App.2d at p. 545.)

 Notwithstanding the creation of a highly regulated state lottery, and certain authorized wagering innovations by licensees on the limited number of racetracks, change "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others. [Citation.] The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." (*Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461].) We cannot say that point has been reached here.

## CONCLUSION

This latest attempt to revive the off-track betting scheme rejected in *People* v. *Haughey, supra,* 48 Cal.App.2d 506, must fail. Appellants' argument that ADS would be betting its own money is frivolous. Irrespective of today's more relaxed climate for gambling, section 337a has not been rendered unconstitutional, and wagering via a messenger service remains proscribed by the statute. Any change here is a matter best left to the Legislature with its fact finding capabilities through hearings at which all interested parties may have input.

## DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.