TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 21-1101 |
| of | : | May 12, 2022 |
| ROB BONTA
Attorney General | : | |
| MARC J. NOLAN
Deputy Attorney General | : | |

The HONORABLE SHARON QUIRK-SILVA, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on a question relating to the California State Lottery.

## QUESTION PRESENTED AND CONCLUSION

May a person lawfully purchase California State Lottery tickets from an authorized retailer on behalf of another person and charge a fee for doing so?

No, a person may not lawfully purchase California State Lottery tickets from an authorized retailer on behalf of another person and charge a fee for doing so.

## BACKGROUND

Historically, California has prohibited the conduct of lotteries. The state Constitution provides that the "Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State."[1] In addition, Penal Code section 321—enacted in 1872 and not amended since—provides:

> Every person who sells, gives, or in any manner whatever, furnishes or transfers to or for any other person any ticket, chance, share, or interest,

_____

[1] Cal. Const., art. IV, § 19, subd. (a).

or any paper, certificate, or instrument purporting or understood to be or to represent any ticket, chance, share, or interest in, or depending upon the event of any lottery, is guilty of a misdemeanor.

Other sections of the Penal Code similarly prohibit various activities relating to lotteries, such as aiding or assisting in the administration of a lottery,[2] keeping or operating a lottery office,[3] or allowing the use of a building to conduct lottery operations.[4] And still other Penal Code sections criminalize various forms of gambling and related activities.[5] For example, Penal Code section 337a prohibits bookmaking;[6] keeping or occupying a place for recording wagers;[7] receiving, holding or forwarding bets on various games of chance, including lotteries;[8] and similar activities.[9]

The sole exception to California's general prohibition of lotteries appears in the California State Lottery Act,[10] which the voters approved as part of initiative measure Proposition 37 on November 6, 1984.[11] Proposition 37 amended the state Constitution to authorize the California State Lottery, as an exception to the general constitutional proscription cited above, and also established the Lottery Act.[12] The Lottery Act in turn created the California State Lottery Commission to administer specified lottery games and allocate a portion of State Lottery revenues to supplement funding for public education in California.[13] In order to allow the State Lottery to function, the Lottery Act

---

[2] Pen. Code, § 322.

[3] *Id.*, § 323.

[4] *Id.*, § 326.

[5] See *id.*, §§ 330-337z.

[6] *Id.*, § 337a, subd. (a)(1).

[7] *Id.*, § 337a, subd. (a)(2).

[8] See *id.*, § 337a, subd. (a)(3) (prohibited bets include those made "upon the result, or purported result, of any lot . . . ."). A commonly understood meaning of "lottery" is "the drawing of lots in which prizes are distributed to the winners among persons buying a chance." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 736.)

[9] *Id.*, § 337a, subd. (a)(4)-(6).

[10] Gov. Code, §§ 8880-8880.72.

[11] California State Lottery, About Us, How We Began: The Lottery Act, https://www.calottery.com/about-us (as of May 12, 2022).

[12] Cal. Const., art. IV, § 19, subd. (d).

[13] Gov. Code, §§ 8880.4, 8880.5.

2

exempts it from the Penal Code provisions that generally prohibit lotteries, but makes clear that this "exemption applies only to the operators of the Lottery and shall not be construed to change existing law relating to lotteries operated by persons or entities other than the Lottery."[14]

In 1999, we issued Opinion No. 98-1103, in which we concluded that a person, company, or service may not lawfully purchase California State Lottery tickets from an authorized retailer on behalf of another person and charge that other person for obtaining the tickets on the person's behalf.[15] In recent years, various proposals have been advanced to allow commercial companies or services to purchase California State Lottery tickets for customers for a fee, using electronic platforms that have developed or greatly expanded since we issued our 1999 opinion. Against this backdrop, we have been asked to revisit that earlier opinion to determine whether it represented—and continues to represent—a correct statement of the law.

## ANALYSIS

In Opinion No. 98-1103, we were asked to consider a company's proposal to buy State Lottery tickets on behalf of customers who would place their ticket orders with the company by telephone and pay for the tickets by credit card.[16] The company would then purchase the tickets from an authorized retailer, deliver the tickets to the customer, and, if a prize was won, assist the customer in redeeming it.[17] For its services, the company would charge a fee based on the number of tickets purchased.[18]

We concluded that such an arrangement was unlawful because it would violate Penal Code section 337a, which provides that every person who, "receives, holds, or forwards . . . any money, thing or consideration of value, . . . staked, pledged, bet or wagered, . . . upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" thereby commits a criminally punishable offense.[19] In

---

[14] Gov. Code, § 8880.6; see also Gov. Code § 8880.70; 77 Ops.Cal.Atty.Gen. 89, 92 (1994).

[15] 82 Ops.Cal.Atty.Gen. 87, 87-89 (1999).

[16] *Id.* at pp. 87-89.

[17] *Ibid.*

[18] *Ibid.*

[19] Pen. Code, § 337a, subd. (a)(3); 82 Ops.Cal.Atty.Gen., *supra*, at pp. 88-89. The punishment for a first offense of this type is currently "imprisonment in a county jail for a period of not more than one year or in the state prison, or by a fine not to exceed five thousand dollars ($5,000), or by both imprisonment and fine." (Pen. Code, § 337a(a).)

21-1101

evaluating the proposed transaction, we observed that the company—which was *not* an authorized retailer of State Lottery tickets within the meaning of the Lottery Act[20]— "would be receiving money from its customers to be wagered on the results of the State Lottery by purchasing lottery tickets."[21]  On this basis, we concluded that the proposed transaction would violate section 337a, which (as we explained) "prohibits a person from acting as the agent of another in purchasing lottery tickets and charging for the services rendered."[22]

We found additional support for our conclusion in the Court of Appeal's decision in *Advanced Delivery Services, Inc. v. Gates*.[23]  *Advanced Delivery* involved a messenger service that would accept betting instructions and money from individual bettors who did not attend the horse races in person, purchase pari-mutuel tickets at the racetrack on the bettors' behalf, and then return the tickets to them.[24]  The court noted that "[s]ection 337a, enacted in 1909, sets forth the general prohibitions against, inter alia, bookmaking, holding or forwarding bets, and making or accepting bets."[25]  The later-enacted Horse Racing Act did not repeal section 337a, but legalized wagering that it would otherwise prohibit "under certain limited circumstances."[26]  At the time *Advanced Delivery* was decided, the relevant sections of the Horse Racing Act "clearly limit[ed] the pari-mutuel wagering exception carved out from section 337a to persons *within the enclosure* contributing their *own money* to a *pari-mutuel pool* and betting on the result of a horserace *held at that meeting*."[27]  Since the conduct of the proposed messenger service

---

[20] See Gov. Code, §§ 8880.47-8880.55; see also Gov. Code, § 8880.13 ("Lottery Game Retailer" means a person or organization with whom the Lottery Commission may contract for the purpose of selling tickets or shares in Lottery Games to the public").

[21] 82 Ops.Cal.Atty.Gen., *supra*, at p. 88.

[22] *Ibid.*

[23] *Advanced Delivery Services, Inc. v. Gates* (1986) 183 Cal.App.3d 967 (*Advanced Delivery*).

[24] *Id.* at p. 970.  The term "pari-mutuel" refers to "a betting pool in which those who bet on competitors finishing in the first three places share the total amount bet minus a percentage for the management." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 901.)

[25] *Advanced Delivery*, *supra*, 183 Cal.App.3d at p. 972.

[26] *Ibid.*, citing *People v. Haughey* (1941) 48 Cal.App.2d 506, 510; see also Bus. & Prof. Code, § 19400 et seq. (currently known as the Horse Racing Law).

[27] *Id.* at p. 973, italics in original.  The Horse Racing Law has since been amended to permit and regulate specified forms of wagering done outside the racing enclosure. (See Bus. & Prof. Code, §§ 19590-19604 (Wagering), 19605-19608.8 (Satellite Wagering).)

21-1101

did not fall within that limited carve-out to section 337a, the *Advanced Delivery* court had "no difficulty in concluding that the proposal would violate section 337a."[28] We noted that the Lottery Act's provisions similarly created an exception to general Penal Code prohibitions regarding lotteries and other forms of gambling, but we found nothing in the Lottery Act (or any other law) "that would exempt the proposed activity from the prohibition of Penal Code section 337a."[29]

Finally, Opinion No. 98-1103 noted that the proposed ticket-purchasing arrangement did not constitute a lottery "pool"—a transaction made legal by a 1990 legislative amendment to the Lottery Act allowing multiple individuals to purchase State Lottery tickets through a representative and share in any proceeds.[30] We concluded that any changes to the current law to allow for the type of arrangement and conduct at issue would similarly be a matter "'best left to the Legislature with its fact finding capabilities through hearings at which all interested parties may have input.'"[31]

Upon revisiting Opinion No. 98-1103, there appears from the outset no reason to deviate from its conclusion. Section 337a continues to prohibit persons from receiving, holding, or forwarding money wagered "upon the result . . . of any lot, chance, casualty, unknown or contingent event whatsoever[.]"[32] A person, company, or service receiving money from customers to wager on the results of the State Lottery—i.e., by purchasing State Lottery tickets—falls squarely within that prohibition. And while the technology for purchasing tickets has evolved since 1999, and now includes the possibility of online ordering via computer or mobile phone applications, the question of whether a person may lawfully purchase lottery tickets for another person in exchange for a fee does not depend on the particular technology or medium used.[33]

---

[28] 82 Ops.CalAtty.Gen., *supra*, at p. 88.

[29] *Id.* at p. 89.

[30] *Ibid.*; Gov. Code, § 8880.33; see 77 Ops.Cal.Atty.Gen., *supra*, at pp. 90-93.

[31] 82 Ops.Cal.Atty.Gen., *supra*, at p. 89, quoting *Advanced Delivery*, *supra*, 183 Cal.App.3d at p. 977.

[32] Pen. Code, § 337a, subd. (a)(3).

[33] We note that Government Code section 8880.28(b) provides in part that "no changes in the types of games *or methods of delivery of these games* that incorporate technologies or mediums that did not exist, were not widely available, or were not commercially feasible at the time of the enactment of this chapter in 1984 shall be made" unless the Lottery Act is amended to "expressly authorize [such] changes." (Italics added.)

The opinion request suggests, however, that Opinion No. 98-1103 improperly treated the Lottery Act as analogous to the Horse Racing Act, as construed in the *Advanced Delivery* case mentioned above, because the Lottery Act does not contain the same stringent restrictions on how and where a player must buy a ticket as the Horse Racing Act. We disagree. As our prior opinion noted, the Lottery and Horse Racing Acts are analogous in the sense that both create specific and limited exceptions to what would otherwise be illegal gambling activities. We relied on *Advanced Delivery* to conclude that the proposed lottery activity was unlawful because it was not authorized by the Lottery Act, just as the proposed betting activity considered in *Advanced Delivery* was not authorized by the Horse Racing Act. We stand by this reasoning and conclusion.

The opinion request also suggests that *Advanced Delivery* was questionable precedent for us to rely on because it misconstrued the California Supreme Court's opinion in *In re Walker*.[34] Again, we disagree. *Advanced Delivery* is fully consistent with *Walker*. *Advanced Delivery* correctly noted that *Walker* involved an amendment to the Horse Racing Act that, before it was repealed in 1953, allowed an individual bettor to place bets on horse races from outside the racing enclosure through an agent who would physically purchase the tickets inside the racing enclosure.[35] While *Walker* observed that this amendment must be read, by necessary implication, to also permit the agent to purchase the tickets, it nonetheless held that, even under the terms of the amendment, the commercial solicitation of bets remained illegal under section 337a.[36] *Advanced Delivery*, in turn, cited *Walker* and cases reaching similar conclusions to support its view that betting conducted by agents on a commercial basis had always been prohibited,[37] and that the commercial scheme at issue in *Advanced Delivery* was likewise unlawful.[38] We therefore continue to believe that *Advanced Delivery* is sound and applicable precedent.[39]

[34] *In re Walker* (1938) 11 Cal.2d 464 (*Walker*).

[35] *Advanced Delivery*, *supra*, 183 Cal.App.3d at p. 974, citing *Walker*, *supra*, 11 Cal.2d at pp. 468-469.

[36] *Walker*, *supra*, 11 Cal.2d at pp. 466, 468-469.

[37] *Advanced Delivery*, *supra*, 183 Cal.App.3d at pp. 973-975.

[38] *Id.* at p. 977.

[39] We also reject the related suggestion that, under *Walker*, an exemption to section 337 may be implied so long as it does not contravene strong state policy. First, because *Walker* interpreted the contours of an express (but later repealed) legislative exemption to criminal liability under section 337, it cannot be read to support the view that such exemptions may be generally implied. In any event, the strong state policy articulated in both *Walker* and *Advanced Delivery* is one that disfavors the commercial taking and forwarding of bets. (See *Walker*, *supra*, 11 Cal.2d at pp. 468-469; *Advanced Delivery*, *supra*, 183 Cal.App.3d at pp. 976-977.)

6

21-1101

We find further support for our prior conclusion in the Lottery Act's lottery pool provision, which we discussed briefly in Opinion No. 98-1103 and examined in more detail in a 1994 opinion (Opinion No. 94-102).[40]  That provision, which allows a representative to purchase tickets on behalf of a group of individuals, is "a limited exception to the general language of Penal Code section 337a."[41]  The Legislature's enactment of the lottery pool provision in 1990 legalized a practice that Penal Code section 337a otherwise would have prohibited, and a pool representative may now be reimbursed for the "actual and necessary expenses incurred in managing a state lottery pool" without violating Penal Code section 337a.[42]  As we stated in our Opinion No. 94-102, however, there is "nothing in the legislative history of [that provision] to suggest that a representative would be authorized to *operate a business in which the charges would generate income for the representative* in addition to reimbursement for actual and necessary expenses."[43]  That is precisely the business activity contemplated here, and we conclude that it is not authorized by the lottery pool exception or any other provision of the Lottery Act.

Finally, we reject a commenter's suggestion that State Lottery regulation number 5.4.2, which states in part that "a Winner need not have purchased the Ticket," indicates that third-party ticket purchasing is generally permissible.[44]  That regulation also provides that a "Winner is a Player who . . . legally acquires a winning Ticket and owns it at the time it is determined to be a winning Ticket."[45]  In our view, the regulation is designed to address scenarios where a ticket purchaser lawfully transfers a ticket (or a share of a ticket) to another person.  For example, a lawful ticket purchaser may give a

---

[40] 77 Ops.Cal.Atty.Gen., *supra*, at p.89.

[41] 77 Ops.Cal.Atty.Gen., *supra*, at p. 93; Gov. Code, § 8880.33.

[42] 77 Ops.Cal.Atty.Gen., *supra*, at p. 93.  We observed that such expenses might include "photostating each ticket purchased and providing copies to each member of the pool, maintaining a safety deposit box for the tickets, keeping all requisite records for the members, and completing the necessary forms to claim any prizes[.]"  (*Id.* at p. 91.)

[43] *Id.* at pp. 93-94, italics added.

[44] The full text of Regulation 5.4.2 is as follows:  "A Winner is a Player who is not a Disqualified Person, who legally acquires a winning Ticket and owns it at the time it is determined to be a winning Ticket either by a Draw or by scratching the play area. Except as otherwise provided in these regulations, a Winner need not have purchased the Ticket; however, the Winner must Claim the Prize.  A 2nd Chance Winner is a person whose eligible entry is drawn in a 2nd Chance Draw and who is identified on the Lottery website as the Winner of that Draw."  (Cal. State Lottery Com., Cal. Lottery Regulations, reg. 5.4.2 (approved May 27, 2021).)

[45] *Ibid.*

7

21-1101

ticket to a relative or a friend as a gift, before or after it is determined to be a winning ticket.  In another example, a member of a lottery pool may own a winning ticket (or a share of such a ticket) without having been the actual purchaser.  Other scenarios that distinguish between a purchaser and a winner and that do not conflict with the Act are conceivable as well.  The cited regulation provides no basis to depart from the conclusion of our 1999 opinion.

In sum, we affirm our prior conclusion that a person may not lawfully purchase California State Lottery tickets from an authorized retailer, on behalf of another person, and charge a fee for the services rendered.  Penal Code section 337a continues to prohibit such conduct.  The proposed activity does not fall within the Lottery Act's limited exception for lottery pools, or within any other exception established by the Lottery Act.  Any changes to current law so as to permit the contemplated practice would be for the Legislature to make.[46]

---

[46] Section 5 of the initiative measure (Proposition 37) that created the California State Lottery states:  "No provision of [the Lottery] Act may be changed except to further its purpose by a bill passed by a vote of two-thirds of the membership of both houses of the Legislature and signed by the Governor."

21-1101